### GULF, COLORADO & SANTA FE RAILWAY COMPANY v. HERBERT M. ROGERS.

Decided November 4, 1904.

**1.—Residence—Domicile.**

One may have a domicile and residence in one state and also a residence in another.

**2.—Same—What Constitutes.**

The fact that a person accepted a position, the duties of which fixed his headquarters at a certain city is sufficient to constitute de facto residence without proof that he owned a home or other property at that point, regardless of the length of time he lived there.

**3.—Same—Nonresident—Action for Personal Injuries—Venue.**

Where a person who claimed a city in another state as his home, but accepted a position in this state the duties of which fixed his headquarters in a certain city where he ate and slept and had his washing done, his employment being for an indefinite period so long as it suited him or he gave satisfaction, his residence in such city was thereby fixed so that a suit by him against a railway for personal injuries must be brought in the county of his residence or in the county where the injury was received.

Appeal from the District Court of Harris. Tried below before Hon. Norman G. Kittrell.

*J. W. Terry* and *A. H. Culwell,* for appellant.—1. The evidence showing, as it does, in this case, that the accident out of which this suit grew, happened in Galveston County, Texas, and that the defendant company had an office and agent in said county; and the evidence further showing, as it does, that the plaintiff at the time of said accident did not reside in the county of Harris, and had not resided there prior to the accident, nor since the same, and the evidence further showing, as it does, that the said plaintiff was a resident of the State of Texas, and resided in the county of Galveston at the time of said accident, the district court of Harris County did not have jurisdiction of this cause of action, but the venue of same was in Galveston County only, and the court erred, therefore, in failing to sustain defendant's plea of privilege interposed herein. See Venue Act of the Twenty-seventh Legislature, as contained in Session Acts, p. 51.

In the case of Stout v. Leonard, 37 New Jersey Law, 492, it was said: "Residence is not domicile, but domicile is residence implied with the intention to remain for an unlimited time. A man can have but

one domicile for one and the same person at any one time, but he may have numerous places of residence. His place of residence generally is his place of domicile, but is not by any means necessarily so, since no length of residence without any intention of remaining will constitute a domicile."

Again, in Burrell v. Jewett, 25 New York Supreme Court, we find the following: "The derivation of the two words, 'domicile' and 'residence,' fully points out the distinction in their meaning. A home, domus, is something more than a temporary place of remaining, residenti, however length such stay may continue."

In Weitkamp v. Loehr, 53 New York Supreme Court, 79, the following language was used: "While, generally speaking, domicile and residence mean the same thing, residence, combined with intention to remain, constitutes domicile, while an established abode, fixed permanently for a time for business or other purposes, constitutes a residence, though there may be an intent, existing all the while, to return to the true domicile. The words 'citizen' and 'inhabitant' do not mean the same thing, as said above, because a man may be a citizen without being an inhabitant of a state, or he may be an inhabitant without being a citizen (Quinby v. Duncan, 4 Horr., 383)."

2. Under the law of this state, venue of suits against railroad corporations for damages for personal injuries is fixed either in the county where the plaintiff *actually* resided at the time of the accident, or in the county where the injury was inflicted, and such venue can not be changed or in any way controlled by the declaration of plaintiff as to residence so as to authorize filing of such suit in another and different county.

Attention is directed to the rule that provisos in a statute are strictly, rather than liberally, construed. Roberts v. Yarborough, 41 Texas, 449; Endlich on Interpretation of Statutes, sec. 186.

Evidently the object of the proviso in our venue statute is to place the nonresident on an equality with the resident of the state. The resident of the state is permitted to choose the county of his residence or the county of the accident. A nonresident of the state, who has no fixed abode in the state which he can select as the place of suit, is permitted to choose the county of the accident, or to select, in effect, a county of temporary residence for the purpose of suit. The reason of the proviso will therefore not apply to a party who is living in the state, there making his living, having a fixed headquarters and an intention to indefinitely remain. To construe the proviso as applying to such party would discriminate in his favor against other residents and citizens of the state who are required to select the county of their abode or of the accident, and such intention to discriminate ought not to be imputed to the legislature.

3. When a person has actually removed to another place with an intention of remaining there for an indefinite time and as a place of present domicile, it becomes his place of residence and domicile notwithstanding he may have a floating intention to return at some future period, and at best the facts in this case only show that the plaintiff had a floating intention of returning to Omaha at some indefinite future

period, if at all, and such facts are not sufficient to change his place of present residence and domicile. State v. DeCasinova, 1 Texas, 406; Barton v. Irasburgh, 33 Vt., 159; Wright v. Schneider, 32 Fed. Rep., 705; Wood v Hamilton, 14 Daily, 41; State v. Groom, 10 Iowa, 315; Sleeper v. Paige, 15 Gray (Mass.), 349; Harvard College v. Gore, 5 Pick. (Mass.), 370; Holmes v. Green, 7 Gray (Mass.), 299; Harris v. Firth, 4 Cranch (C. C.), 710; Young v. Pollak, 85 Ala., 439; Keller v. Baird, 5, Heisk, 179; Graham v. Trimmer, 6 Kan., 230; Ringold v. Barley, 5 Md., 186; 59 Am. Dec., 107.

*Hume, Robinson & Hume* and *Lovejoy & Malevinsky,* for appellee.— 1. The plaintiff alleging himself to be a nonresident of the State of Texas, stated a case of jurisdiction and venue in the trial court, to defeat which the burden by plea and affirmative proof that he was not a nonresident of Texas rested on the defendant, and the defendant failing to sustain the burden, the court did not err in overruling the plea. Venue Act, 27th Leg., Laws 1901, p. 31; Railway Co. v. Lloyd, 78 S. W. Rep., 43; Galveston v. Ephriam, 18 Texas, 118, 124; Kelso v. Adams, 2 Posey's U. C., 374, 376; Hopson v. Caswell, 13 Texas Civ. App., 492, 36 S. W. Rep., 513; Graves v. Bank, 77 Texas, 555, 556; Iiam v. Root, 22 Texas Civ. App., 413, 55 S. W. Rep., 413; Michael v. Michael, 79 S. W. Rep., 75; 5 Am. Eng. Ency. of Law (1st ed.) 865, 859, 861-2, 875, and notes 2 and 3, citing, inter alia, Knox v. Waldabough, 3 Me., 455, and Dicey on Domicile, 125; Price v. Price, 27 Atl. Rep., 201; Wallace v. Wallace, 54 Atl. Rep., 433, 7 Law Notes, 52-3, June number, 1903; Alabama G. & S. Ry. Co. v. Carroll, 84 Fed. Rep., 772, 780; Chicago & N. W. Co. v. Ohle, 117 U. S., 123, 128.

2. The statute is one fixing the rule of venue in actions against railroad corporations in one single class of cases—qualified by explicit exceptions. The word "resident," and not less the word "nonresident," have appeared in our venue, and other, statutes for many years, and have been repeatedly construed by our courts, and it has remained for a meaning to be ascribed to them so novel, not to say impossible, as to entitle counsel to the fame that waits upon independent and daring discovery.

By rule of law, every man has, first, his domicile of origin, and, second, if he will, his domicile of choice, which he retains until it is abandoned; and in that event either a new domicile of choice is acquired, or the domicile of origin is resumed, in fact or by assumption of law. 5 Am. & Eng. Ency. of Law (1st ed.), 865; Cross v. Evarts, 28 Texas, 523, 533; Desmare v. United States, 93 U. S., 605, 610.

3. The venue article begins thus: "Art. 1194. No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile," etc.

Inhabitant and resident mean the same thing. Burrill's Law Dic., title "Inhabitant;" Hart. Dig., art. 667. And the word domicile is evidently used in the statute in the sense of residence. Brown v. Boulden, 18 Texas, 431, 433; O'Connor v. Cook, 26 S. W. Rep., 1113.

This article applies, in terms, to those who, being inhabitants of the

state, are also domiciled there; that is, it prescribes the general rule of venue as to those only who are domiciled in the state—citizens of the state. See Hopson v. Caswell, 13 Texas Civ. App., 494, 496, 36 S. W. Rep., 312-3; Martin v. Burns, 80 Texas, 678-9.

Not a single exception to the general rule, save that permitting said suit against a nonresident in the county of the plaintiff's residence seems to consider venue in respect of persons other than those resident or domiciled in the state.

Article 1230 and 1235 make an explicit distinction between nonresidents of the state, absentees from the state, transient persons, and persons of unknown residence. And so do the decisions. Fernandez v. Casey, 77 Texas, 452, 454; Martin v. Burns, 80 Texas, 676, 678-9; Hopson v. Caswell, 13 Texas Civ. App., 494, 496; Iiams v. Root, 22 Texas Civ. App., 414-6, 55 S. W. Rep., 413; Gunter v. Armstrong, 2 Texas Civ. App., 600-1, 21 S. W. Rep., 608.

Under neither the general statute nor the Special Venue Act is the railroad entitled to restrict the venue when it is sued by a nonresident of the state, and seeks, as here, to escape the venue by asserting immunity under an exception available only against plaintiffs who are resident and domiciled in the state and in particular counties of the state.

GILL, Associate Justice.—On February 17, 1903, appellee while serving as brakeman, was injured by one of appellant's trains in Galveston County, Texas. He brought this suit in Harris County, Texas, alleging that his injuries were due to the negligence of appellant and seeking to recover damages therefor, and further alleging that he was a nonresident of the state. Appellant pleaded in abatement its right to be sued in the county of plaintiff's residence or else the county in which the accident occurred, and alleged that plaintiff was not a nonresident of the state, but a resident of this state and of Galveston County.

The issue of venue thus presented was submitted to the court for determination, who after hearing the evidence overruled the plea and the cause proceeded to trial on the merits. Plaintiff recovered a judgment against defendant for $16,005, and the latter has appealed.

By the first assignment of error the action of the trial court on the issue of venue is assailed. The facts upon this point as disclosed by the plaintiff's own testimony are as follows: The accident occurred in Galveston County, more than half a mile from the county line. He was twenty-seven and one-half years old at the date of the trial and was not married. His parents are dead. He was born in Clark County, Iowa, and lived there until he was sixteen or seventeen years old, when he went to Council Bluffs, Iowa, which is just across the Missouri River from Omaha, Neb. These two towns are connected by a car line and it is but a few minutes' ride between the two points. He remained there until he attained his majority. During his stay in Council Bluffs he became acquainted to some extent in Omaha, and when he became a man he went to Omaha to serve as brakeman on one of the railroads running out of that place. He preferred to live in Omaha and went there to work and live. At that time he remained in Omaha about four

months. He then went to Laramie, Wyo., to get a position as brakeman in that state. He went there to work during the winter as business was dull in Omaha, and remained in Wyoming until July 1st of the following year. He then returned to Omaha and worked from July, 1900, to May, 1901, as brakeman. He then returned to Wyoming again and worked there from February until September, 1902. From October to December, 1902, he worked as brakeman in Pocatello, Idaho. During a part of this time not covered by these dates he was in California and Texas. In the latter state he served as brakeman a little over a month about December, 1901. He then worked for the Frisco road about three months in Monett, Mo. In July, August and September, 1902, he worked for the Cotton Belt Railroad at Pine Bluff, Ark. He then worked for a few days on a road running out of Fort Worth, Texas. When he quit the Fort Worth position he came to Temple, Texas, and applied to appellant for a position on January 5, 1903. He secured the place, and from that date until February 17th, the date of the accident, he ate and slept in the city of Galveston every night except when he was out on his run. Galveston was his headquarters. He had no room or boarding place, but slept in the caboose and ate at a restaurant or in the caboose. He had his washing done in Galveston. He accepted each of the above enumerated positions for an indefinite length of time, intending to remain as long as the work suited him or until he voluntarily quit or was discharged. He had chosen Omaha as his home, had never selected any other, and intended at some time when he had acquired some wealth to return there permanently. He liked the place and had friends and acquaintances there. Was also a member of a local order at that point called the "Brotherhood of Railway Trainmen." These were the only ties which bound him to that place. He had no property there and no relations there. In the entire twenty-seven and one-half years of his life he had lived only about eighteen months in Omaha. He stated that he came to Texas to "make a stake," intending when that was done to return to Omaha and live. There is no other evidence in the record either in support of or opposed to the existence of this fixed intention to return to Omaha and his choice of that place as his permanent home.

Under this state of facts appellant maintains: First. That inasmuch as the evidence discloses only a mere floating and conditional intention to return to Omaha, and because as to each employment occupied by him in other states than Nebraska he undertook it with the intention of engaging in it for an indefinite length of time, his abandonment of Omaha as his legal domicile is conclusively shown and this notwithstanding his testimony that there was always present in his mind a fixed purpose not to abandon it but to return and resume his residence there at some indefinite time. That in legal contemplation the facts fix his status as to residence and citizenship against which his mere purpose will not be permitted to prevail. Second. If it be conceded that by reason of his intention to return he remains a citizen of Nebraska, yet under the venue laws of this state the county or state of his citizenship does not fix the venue of suits by or against him.

The first proposition is not without force, and finds strong support in

the authorities. We do not pause to discuss it, however, as in our opinion a determination of the second will dispose of the question of venue in its relation to this case.

For the purposes of this discussion we will assume that the trial court was right in finding that plaintiff was a citizen of Nebraska, had chosen Omaha of that state as his domicile, had not abandoned it, but intended when certain purposes of his had been accomplished to return to that city and resume his permanent residence there.

The question is necessarily controlled by our statute governing the venue of actions, hence it is necessary to consider it not only with reference to the article fixing the venue of this particular class of actions, but also such other articles as by reason of their analogy may aid in a correct construction of the controlling article. Section 1, chapter 27, of the Acts of the Twenty-seventh Legislature, page 31, fixes the venue of actions against railroad corporations in personal injury suits and is as follows:

"That all suits against railroad corporations, or against any assignee, trustee or receiver operating any railway in the State of Texas, for damages arising from personal injuries, resulting in death or otherwise, shall be brought either in the county in which the injury occurred or in the county in which the plaintiff resided at the time of the injury; provided, that if the defendant railroad corporation does not run or operate its railway in or through the county in which the plaintiff resided at the time of the injury, and has no agent in said county, then said suit shall be brought either in the county in which the injury occurred, or in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent; and provided further, that in case that the plaintiff is a nonresident of the State of Texas, then such suit may be brought in any county in which the defendant corporation may run or operate its railroad or may have an agent; provided, that when an injury occurs within one-half mile from the boundary line dividing two counties suit may be brought in either of said counties."

Prior to this enactment such suits might be brought in any county through which the line of defendant railway company ran or in any county where it had an agent. Rev. Stat., art. 1194, subdiv. 23.

The last named article provides generally: "No person who is an inhabitant of this state shall be sued out of the county of his domicile except in the following cases." Then follow twenty-seven subdivisions disclosing the exceptions, subdivision 23, supra, being among the number.

Under subdivision 2 a transient person may be sued in any county in which he may be found.

Where defendant resides without the state or where his residence is unknown he may be sued in the county where the plaintiff resides. Subdiv. 3.

The right to be sued in a particular county is a personal privilege. To be availed of it must be specially pleaded and the burden of proof is on the person asserting the right.

It is apparent from these provisions that if appellee (an individual and not a corporation) had been the defendant the question would have

been one of no difficulty, for if he was shown to be a nonresident he could be sued in the county of plaintiff's residence. If transiently in this state he could be sued in any county in which he might be found. If a citizen of this state, but a transient person having no residence, he could be sued in any county in which he might be found.

But the situation here is reversed and the difficulty grows out of the fact that the venue of this action is fixed by the residence of plaintiff if he is shown to have one in this state. In this connection the question suggests itself whether, since the statute expressly recognizes the possibility of acquiring the status of a transient person, such an one if personally injured by the negligence of a railway company might not be required to bring his suit only in the county in which the accident occurred?

It seems to us, however, that many of the difficulties which would otherwise confront us in disposing of the main question are removed by adjudications in our own state defining the terms domicile, inhabitant, and residence and disclosing the sense in which they were used in article 1194, supra, and its subdivisions.

In Pearson v. West, 97 Texas, 238, 77 S. W. Rep., 944, the defendant West was sued in the District Court of Bexar County for damages alleged to have been caused by an assault committed by defendant on the plaintiff in Live Oak County. The defendant pleaded his privilege to be sued in Live Oak County, alleging himself to be a citizen and resident of that county. The facts showed that he was a citizen of that county, had large interests there, voted there and resided there with his family for six months in the year; but it was also shown that he owned a dwelling in San Antonio in Bexar County in which he resided for an equal length of time of each year. The Supreme Court held, in an opinion by Justice Brown, that one might have more than one residence situated in different counties and might be sued in any county in which he might thus reside. In disposing of the case it was held that the legislature used the word domicile in the sense of residence rather than according to its technical meaning, and that the residence might be one of several places where the defendant might reside. It was also held that inhabitant and resident mean the same thing and that there may be a difference between a man's residence and his domicile. Brown v. Bouldin, 18 Texas, 434, and Crawford v. Carothers, 66 Texas, 200, were cited in support of the conclusion reached. In the latter case exceptions were sustained to a plea of privilege because it alleged merely that defendant was an inhabitant of another county and failed to exclude the idea that he was a resident of the county in which the suit was brought. In O'Connor v. Cook, 26 S. W. Rep., 1113, this court held that members of a firm engaged in Galveston County in construction of the jetties, and living there during the progress of the work, might be sued there notwithstanding they were citizens of and had permanent homes in Dallas County, Texas.

The meaning of these terms in their relation to the question of venue being thus clearly and definitely settled, it but remains to be determined whether plaintiff, a citizen of Omaha, Neb., was merely a transient person in this state at the time of the accident, or whether he had adopted

Galveston County as his temporary residence during the indefinite period he intended to remain in the service of appellant, for it would seem to follow logically that if one can have two residences in this state under our venue laws he can also have residence in this state and residence and domicile in another. There is manifest analogy in this connection between the states as subdivisions of the Federal Union and counties as subdivisions of the states, and as a man may have domicile and residence in one county and residence also in another, so he may have a domicile and residence in one state and reside for a time in another. The privilege of voting may be exercised only in the county of the domicile, and this though one should have an established residence in another county in the sense in which it is here used.

It is clear that in the West case, supra, and the other cases cited in that connection the question of citizenship in a particular county had no bearing on the question of venue, nor can we see how it can properly be considered in determining the question in the case at bar.

But it is urged by counsel for appellee that our venue laws in so far as they prescribe general rules of venue apply in terms only to citizens of this state. It is not accurate to say they are so limited in terms, nor can we assent to the proposition that they are so by reasonable implication. They were intended to apply and their privileges are extended to all those who in any permanent sense are located within the state jurisdiction.

Let us suppose a citizen of Germany came to a particular county in Texas to engage in construction work which it would take seven years to complete, he having no thought of abandoning his allegiance to the Kaiser. Could it be contended with any show of reason that he would be denied the right to plead his privilege to be sued in the county of his actual residence; or that he would be treated as a transient person suable in any county in which he might be found, or as a nonresident suable in the county where the plaintiff might reside? We think the illustration suggests its inevitable answer. We think the law is broad enough as construed by the courts to include within its privileges the citizen of another state or country resident in this state. It may be said to be a matter of common knowledge that a large number of citizens both of other states and other countries reside in this state for long periods of time. Indeed it is a common thing for aliens to reside in this state for years refusing or neglecting to become citizens, but establishing themselves in the most permanent way, their children becoming citizens by birth here, the alien parents enjoying all the privileges of a citizen except the right to vote. In view of these facts we can not bring ourselves to believe the Legislature intended on the one hand to withhold from so large a class the general rights conferred by the venue laws on citizens of the state, and confer on the other hand privileges which our own citizens do not enjoy. If the contention of appellee is sound, in what forum would such person sue an absentee from the state or a nonresident under the venue laws above referred to? If unfortunate enough to become a defendant at the suit of one of our citizens he might, though residing in Sabine Pass, be compelled to defend in El Paso.

The suggestion of such a possibility suggests also one of the strongest

reasons for the construction placed by our Supreme Court on the words domicile, residence and inhabitant, in construing our venue laws.

It follows logically that if a citizen of another country can, while retaining such citizenship, acquire such a residence in this state as to embrace these privileges, he would also as a plaintiff be bound by the laws restricting his right to sue.

But we are reminded by plaintiff that in articles 1230 and 1235 of the Revised Statutes, governing the service of process, a distinction is observed between those merely absent from the state and nonresidents of the state.

It is probably true that in the articles last cited the word nonresident is used in the sense of noncitizen, and this view is rendered more certain by the fact that the rule announced in Pennoyer v. Neff, 95 U. S., 714, is not applied to judgments rendered in this state on substituted service against citizens of this state temporarily absent in another; but even if this is true it can not affect this inquiry. The suit once instituted, the laws governing citation and service have no relation to venue, and it goes without saying that a defendant under a plea assailing the validity or sufficiency of citation or service could not raise the question of venue.

In addition to this it may well be said that inasmuch as the meaning of these terms as used in the venue statutes has been fixed by authoritative adjudication, their use in a different sense in legislation upon other subjects would not affect the question.

None of the cases cited by appellee is in point, and most if not all of them involve the inquiry as to citizenship rather than residence and do not pertain to the question of venue.

We will proceed then to ascertain the legal effect of the proof as to the residence of plaintiff in Galveston County.

In disposing of this inquiry the position of appellee on what it takes to constitute de facto residence must be conceded to be sound. It is clearly true that in order for one to validly claim a particular city or county as his residence it is not necessary to show that he owned a home or other property at that point. That he is without means, without a habitation, without kindred, without acquaintance, is immaterial. As to establish citizenship in Nebraska and a domicile in Omaha it was enough to show actual residence in Omaha at a former time and no purpose to abandon it and acquire another domicile, so it is enough in establishing the residence of plaintiff in Galveston County to show that he accepted a position with defendant, the duties of which fixed his headquarters at Galveston. That he actually lived there while not out on his run or spending a single night in Bellville, the end of the division. That he ate and slept in Galveston and has his washing done there, with the intention of so continuing during the indefinite period of his employment. It is certainly true that he was a resident of the State of Texas. He does not come within the definition of a transient person, for he had a known and established headquarters, and it is equally certain that he was not a resident of any other county in the state. The facts give his stay in Galveston the quality of permanence in a certain sense, and this being true the length of his stay in that

city prior to the accident is immaterial.  His selection of that place as headquarters during his indefinite term of service determined the place of his residence as soon as he thus established himself there.

How can it be said that if he had been sued in Harris County the facts as disclosed by this record would not have sustained a plea of privilege to be sued in Galveston County if interposed by him?

We have found no decision holding that one who interposes his plea of privilege to be sued in the county of his residence in this state should supplement his other proof by showing citizenship in this state. Neither the statute nor any decision we have been able to find requires citizenship to be either pleaded or proved.

The case of Galveston H. & S. A. Ry. Co. v. Cloyd, 78 S. W. Rep., 43, is the only one we have found in which the construction of this statute has even incidentally arisen.  That case apparently sustains the contention of appellee that the facts in this case do not establish residence in Galveston County.  A closer inspection of the opinion, however, convinces us that it is not inconsistent with the conclusion we have reached.  The facts are meagerly stated, and the court holds no more than that the residence of plaintiff was shown to be in Medina County and that his work for a few weeks in Pecos County, with no intention of establishing his residence there, did not make that his place of residence.  However, if it is in fact an authority *contra* we are nevertheless constrained to adhere to our conclusion.

The venue article invoked by the apellant manifestly conferred a privilege upon railway companies which under the former law they did not enjoy.  The right is absolute when properly invoked, and since we regard the legal effect of the proof as sustaining the plea the judgment of the trial court will be reversed and the cause dismissed.  We have not considered the case on the question of liability.

*Reversed and dismissed.*

Writ of error refused.