[No. 20522.   Department Two.   July 26, 1927.]

JACQUELINE SPIELMAN, *Appellant,* v. LEE B. SPIELMAN, *Respondent.*[1]

[1] DIVORCE (16, 17)—JURISDICTION—DOMICILE OF PARTIES—VENUE. Rem. Comp. Stat., § 984, providing that an action for a divorce may be commenced by any person who has been "a resident of the state for one year," uses the word "resident" in its usually accepted sense, rather than that of a technical domicile; so that a wife, who never had a residence out of the state, who was married while temporarily out of the state to a traveling salesman who had had no permanent residence for many years, is entitled to maintain an action for a divorce in this state.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 17, 1927, upon findings in favor of the defendant, in an action for divorce, tried to the court.   Reversed.

*Kimball & Blake,* for appellant.

*Chas. W. Greenough* and *Del Cary Smith, Jr.,* for the state.

TOLMAN, J.—This is an action for divorce, in which the defendant made default.   The trial court was of the opinion that the plaintiff had not been a resident of this state for one year immediately preceding the bringing of the action, as required by our statute, and entered a judgment of dismissal, from which the plaintiff has appealed.

The facts which throw light upon the question involved may be briefly stated as follows:  Appellant was born and lived all of her life in the city of Spokane in this state.  In the spring of 1925, appellant's mother, being in ill health, went to the city of Portland, in the state of Oregon, for a change of climate, or for treatment.  Appellant accompanied her mother for the pur-

[1]Reported in 258 Pac. 37.

pose of caring for her. While so temporarily sojourn-
ing in Oregon, appellant was married to the defendant
on May 21, 1925, at Portland.

The defendant was a traveling salesman, covering a
territory described as being "west of Denver," and
had no known home or permanent abiding place. He
was born in the state. of Maryland, but had left that
state some fifteen years before his marriage, only re-
turning to it once thereafter for the purpose of a brief
visit with relatives. After the marriage, the couple
remained in Portland at an hotel for about ten days,
when the husband left to continue his usual business
trip, and the wife remained in Portland for a few
weeks in attendance upon her mother. In the latter
part of July following, appellant, with her mother,
returned to the parental home in Spokane. The de-
fendant joined her there some time later, and for six
or seven weeks the couple lived in the home of the
wife's parents in Spokane. The husband then went to
Seattle, secured a position there, returned and took his
wife to Seattle, where they remained for two weeks.
At the end of that time he resigned the Seattle posi-
tion, and the couple went again to Portland. The hus-
band there obtained employment, which he held only
four days, and following that he went to California,
and the wife returned to her parents' home in Spo-
kane, where she has ever since remained.

[1] From these admitted facts, the trial court
found:

. "That plaintiff has not been a resident of the state
of Washington for more than a year immediately
prior to the commencement of this action, though she
is now residing in Spokane county therein."

This finding and the failure to find the converse, as
requested, are assigned as error, and present the ques-
tion now involved.

Our statute reads:

"Any person who has been a resident of the state for one year may file his or her complaint for a divorce or decree of nullity of marriage, under oath, in the superior court of the county where he or she may reside, and like proceedings shall be had thereon as in civil cases." Rem. Comp. Stat., § 984 [P. C. § 7503].

What did the legislature intend by the language "Any person who has been a resident of the state for one year"? The trial court seems to have adopted the view that, when appellant married, she thereby abandoned her previous domicile and place of residence, and, in the eye of the law, her domicile and residence thereafter became that of her husband. In *State ex. rel. Baldwin v. Superior Court,* 11 Wash. 111, 39 Pac. 818, this court recognized that the distinction between domicile and residence is an extremely technical one, but apparently recognized that there might be cases in which such a distinction should be drawn. We are, therefore, called upon to decide whether the legislature meant, by the language quoted, the technical domicile of the law, which sometimes differs from residence, or gave to the word "residence" its usual and commonly accepted meaning. Shumaker and Longsdorf's Cyclopedic Law Dictionary defines domicile as being "that place where a man has his true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Anderson's Law Dictionary defines it as "the place where a person lives or has his home; that is, where one has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning."

Upon the theory that a domicile is abandoned only when a new domicile is established, an argument can be advanced to the effect that the husband having been

born in Maryland and never having established a domicile elsewhere, the marital domicile became that of the husband, and was therefore in Maryland. But such a construction leads to absurd results in this case and leaves the wife with absolutely no forum whatever in which to seek relief. While for purposes of substantial justice the husband's domicile might be held to ‚be in Maryland, yet, .when it leads to injustice, it cannot be held that either he or the marital community was a resident of Maryland within the meaning of that term as used in our statute.

We are convinced that the legislature used the word "resident" in its usually accepted meaning, and, applying that meaning here, the appellant, who never had resided outside of this state, should not have that residence taken from her by any legal fiction until there is shown an intention on her part, or on the part of the marital community, to reside elsewhere. The record discloses that the husband had no residence within the meaning of our statute, and that there never was any intention on the part of either spouse, during the time they lived as such, to reside anywhere outside of this state, and therefore the wife's residence in this state was never abandoned, and still continues. This is not a case of sojourning within the state for the purpose of taking advantage of our laws, and calls for very different treatment.

Many courts have discussed phases of this question in such a way as to lend support to these views. *Hinds v. Hinds,* 1 Iowa 35; *Love v. Cherry,* 24 Iowa 204; *Cohen v. Daniels,* 25 Iowa 88; *Fitzgerald v. Arel,* 63 Iowa 104, 16 N. W. 712, 18 N. W. 713; *Gulf, C. & S. F. R. Co. v. Rogers,* 37 Tex. Civ. App. 99, 82 S. W. 822; *Ft. Worth & D. C. R. Co. v. Monell,* 50 Tex. Civ. App. 287, 110 S. W. 504; *Kelsey v. Green,* 69 Conn. 291, 37 Atl. 679.

There seems to be no question raised but that, on the merits, appellant was entitled to a decree of divorce. We have examined the evidence in that respect and find it ample.

The judgment is therefore reversed, with directions to enter a decree as prayed for.

MACKINTOSH, C. J., HOLCOMB, PARKER, and FRENCH, JJ., concur.