251 So.2d 15 (1971)
Terence Godfrey ASHMORE, Appellant,
v.
Jan Kemper ASHMORE, Appellee.
No. 70-687.
District Court of Appeal of Florida, Second District.
July 28, 1971.
Terence Godfrey Ashmore, in pro. per.
Ronald Sales, Palm Beach, for appellee.
MANN, Judge.
By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband: under whose wing, protection, and cover, she performs everything; and is therefore called in our law French a feme covert, foemina viro co-operta; is said to be covert-baron, or under the protection and influence of her husband, her baron, or lord; and her condition during her marriage is called her coverture. Upon this principle, of an union of person in husband and wife, depend almost all the legal rights, duties and disabilities, that either of them acquire by the marriage. I speak not at present of the rights of property, but of such as are merely personal. For this reason, a man cannot grant anything to his wife, or enter into covenant with her: for the grant would be to suppose her separate existence, and to covenant with her, would be only to covenant with himself: and therefore it is also generally true, that all compacts made between husband and wife, when single, are voided by the intermarriage. A woman, indeed, may be attorney for her husband; for that implies no separation from, but is rather a representation of, her lord. And a husband may also bequeath anything to his wife by will; *16 for that cannot take effect till the coverture is determined by his death. 1 Blackstone, Commentaries on the Laws of England §§ 598, 599 (Jones ed. 1915)
Compare our present Constitution with Blackstone: "There shall be no distinction between married women and married men in the holding, control, disposition, or encumbering of their property * * *" Fla. Const. Art. X, § 5, F.S.A., (1968). The status of women has undergone great change since Blackstone's day, yet vestiges remain of the older view which are inharmonious with our present law. We consider here the question whether as a matter of law a wife acquires her husband's domicile and cannot retain her own upon marriage. The questions whether a trial judge who had already granted a generous continuance was obligated to grant another and whether the testimony of extreme cruelty was adequate were so lacking in merit that we disposed of them on motion.[1]
The trial court necessarily determined that upon her marriage to the appellant, Mrs. Ashmore retained her Florida domicile. There is ample evidence. She owns a home in Palm Beach. Her children by a prior marriage are there, and she is forbidden to change their domicile  itself an automatic thing, by some authorities, if she changes her own  without approval of the court. The appellant himself came over to testify in support of her petition for authority to change the domicile of the children to England. Thus we must affirm if it is possible for a woman to retain her domicile upon marrying a foreigner.
We conclude after an examination of all of the Florida cases[2] in which the rule is discussed that normally, and perhaps presumptively, but not inevitably, a wife acquires her husband's domicile upon marriage.
Our Supreme Court has long held that a wife may acquire a separate domicile,[3] even without fault on the husband's part.[4] None of the cases in which it is stated that a wife acquires her husband's domicile upon marriage specifically holds that she does so of necessity beyond the power of a Florida court to determine that she has retained her own domicile. Other courts faced with this problem have held that they had jurisdiction, but the reasoning seems occasionally strained.
In Berlingieri v. Berlingieri,[5] the wife, a lifelong resident of Illinois, married in New York a man whose "technical domicile may be said to be in Italy," but was "an international itinerant." "The wife's established domicile in Illinois could not shift to that of her husband until he had established one elsewhere."[6]
In Spielman v. Spielman,[7] a woman who had lived all her life in Spokane went with her sick mother to Portland, Oregon, and there met and married a man who was originally from Maryland but had held a *17 lot of jobs in a lot of places. The husband joined the wife at the parents' home in Spokane, then they went to Seattle for two weeks and then to Portland, where he kept a job four days and moved on to California. The wife returned to Spokane. The court held that she had "residence" within the meaning of the Washington statute, and said that holding that the marital domicile was in Maryland would lead to absurd results.
In Glassman v. Glassman,[8] an Ohio woman married a West Virginia resident stationed in Kentucky, honeymooned in New Orleans, from which he went on to Panama and she returned to her parents' Ohio home. The court said that the common law rule was that "the wife upon her marriage is by law invested with the domicile of her husband," but that the rule is "subject to a qualification that such obligation on the wife is only effective when the husband has provided and designated a domicile."[9]
In all of these cases the result is that dictated by common sense, as is that we reach here. We do not think that a strained differentiation between domicile and residence is necessary. Mrs. Ashmore stayed but briefly in London, in a hotel. Ashmore never provided a marital home there. She continued to maintain her Florida home and they spent more time in Palm Beach than in London, and not much in either place. We find that the trial judge was fully justified in determining that Mrs. Ashmore had not given up her Florida domicile upon marrying.
The determination that Mrs. Ashmore was domiciled in Florida is supported by the facts and the law. Were we to find that of necessity she acquired her husband's domicile we would place "too great an emphasis on the common-law fiction that by marriage a woman's identity is absorbed into that of her husband."[10]
Affirmed.
PIERCE, C.J., and McNULTY, J., concur.
NOTES
[1] Fla.App.2d 1970, 241 So.2d 424. Our earlier opinion assumed that the English law was rather strict as to grounds for divorce, citing some widely read criticisms. The appellant advises us that by the Divorce Reform Act 1969 the sole ground for divorce in England "shall be that the marriage has broken down irretrievably." Florida has since adopted a similar act. Laws of Florida, c. 71-241.
[2] Judd v. Schooley, Fla. 1963, 158 So.2d 514; Brown v. Brown, Fla.App. 1960, 123 So.2d 382; Franks v. Franks, Fla. 1954, 75 So.2d 282; Merritt v. Merritt, Fla. 1951, 55 So.2d 735; McIntyre v. McIntyre, Fla. 1951, 53 So.2d 824; Pawley v. Pawley, Fla. 1950, 46 So.2d 464; Chisholm v. Chisholm, Fla. 1929, 98 Fla. 1196, 125 So. 694; Beekman v. Beekman, Fla. 1907, 53 Fla. 858, 43 So. 923; Smith v. Croom, Fla. 1857, 7 Fla. 81.
[3] Merritt v. Merritt, Fla. 1951, 55 So.2d 735; Herron v. Passailaigue, 1926, 92 Fla. 818, 110 So. 539.
[4] Judd v. Schooley, Fla. 1963, 158 So.2d 514, reversing this court's decision in Schooley v. Judd, Fla.App.2d 1963, 149 So.2d 587.
[5] 1939, 372 Ill. 60, 22 N.E.2d 675.
[6] 22 N.E.2d at 677.
[7] 1927, 144 Wash. 421, 258 P. 37.
[8] 1944, 75 Ohio App. 47, 60 N.E.2d 716.
[9] Id. at 718.
[10] Judd v. Schooley, supra, note 4.