Dear Mr. Gilreath:
As Property Appraiser for Volusia County, you have asked for my opinion on substantially the following question: Should a county property appraiser grant homestead exemptions to both applicants when a married woman and her husband own two separate residences and have applied for separate homestead exemptions under Article VII, section 6, Florida Constitution?
Article VII, section 6, Florida Constitution, provides:
 "(a) Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, except assessments for special benefits, up to the assessed valuation of five thousand dollars, upon establishment of right thereto in the manner prescribed by law. The real estate may be held by legal or equitable title, by the entireties, jointly, in common, as a condominium, or indirectly by stock ownership or membership representing the owner's or member's proprietary interest in a corporation owning a fee or a leasehold initially in excess of ninety-eight years.
 (b) Not more than one exemption shall be allowed any individual or family unit or with respect to any residential unit. No exemption shall exceed the value of the real estate assessable to the owner or, in the case of ownership through stock or membership in a corporation, the value of the proportion which the interest in the corporation bears to the assessed value of the property."
Thus, under Article VII, section 6, those persons who meet the constitutional requirements are able to qualify for a tax exemption for their homestead property. Such person must (1) have legal or equitable title to the real estate for which the exemption is filed; and (2) maintain his or her own permanent residence, or the permanent residence of another who is legally or naturally dependent upon the applicant, on the property. The constitutional provision allows no more than one exemption to any individual or family unit or with respect to any residential unit.
Your question arises in light of an earlier opinion of this office, Attorney General Opinion 75-146, and certain factual concerns. Attorney General Opinion 75-146 considered whether the county property appraiser should grant homestead exemptions to both applicants when a married woman and her husband owned two separate residences. In that opinion, both properties were held as tenants by the entireties, and the married woman was separated from her husband. She was living and making her permanent home in one of the residences and her husband was living and making his permanent home in the other. Both had timely filed for the homestead exemption. Under the factual situation presented in that opinion request, this office concluded that a married woman and her husband could establish separate permanent residences without showing "impelling reasons" or "just grounds" for filing. The opinion stated that if the property appraiser determined that separate permanent residences and separate "family units" had been established by the husband and wife and they were otherwise qualified, each could be granted a homestead exemption from ad valorem taxation under Article VII, section 6, Florida Constitution. The fact that both residences were owned by both the husband and wife as tenants by the entireties was not seen to defeat the grant of homestead ad valorem tax exemption to the permanent residence of each.
According to your letter, you are concerned about the homestead status of property in a situation where a husband and wife live within easy driving distance of two separately owned properties and claim to be two separate family units. Each spouse claims a homestead exemption. You have asked for further guidance in this situation.
As the Florida Supreme Court held in Horne v. Markham:
 "Article VII, Section 6, of the Constitution of the State of Florida . . . does not establish an absolute right to a homestead exemption. Rather, it clearly provides that taxpayers who otherwise qualify shall be granted an exemption only `upon establishment of right thereto. . . .'"[1]
The burden is on the applicants to demonstrate that they have established separate family units. This office and the Florida courts have recognized that in order for there to be entitlement to a homestead tax exemption, there must be ownership of the home, residence therein, and the making of such residence as the permanent home in good faith.[2]
The constitutional and statutory homestead provisions should be interpreted in the liberal and beneficent spirit in which they were conceived.[3] Where the benefits of the tax exemption are claimed, the constitution or statutes involved must be construed strictly against the one attempting to bring himself or herself within the terms of the exemption.[4] It is the bona fide intent of the parties to make the residence a homestead or permanent residence and occupying it as such exclusively of any other dwelling place that determines the existence of a homestead and mere occupancy without such intention will not suffice. The question of intent is to be determined by all the surrounding facts and circumstances and not necessarily by the representation of the parties.[5] In fact, section 196.015, Florida Statutes, provides a number of factors for the property appraiser to consider in determining whether an applicant for a homestead exemption intends to establish a permanent residence in this state.
In Attorney General Opinion 75-146 this office reviewed earlier opinions that had considered significant the fact that the establishment of a separate domicile by the wife was proper because cohabitation as husband and wife had ended with separation for purposes of divorce.[6]
However, the Florida Supreme Court, in its 1963 opinion in Judd v.Schooley,[7] held that even though a married woman was living congenially with her husband, nonetheless it was legally possible for "a married woman, in good faith, to claim a permanent home in Florida property even though her husband is legally domiciled elsewhere." The court went on to say that ". . . a showing of necessity to establish the separate abode is not essential to a showing of good faith under Article X, section 7[.]"[8]
In a 1964 Attorney General's Opinion released shortly after the decision was rendered in Judd v. Schooley, supra, this office considered whether both a husband and wife, each owning separate dwelling houses, could be granted homestead ad valorem tax exemptions. The opinion was based on the presumption that "the wife resides in her dwelling, the husband residing in his dwelling, each alone, during periods of time, while at other periods of time they reside together in the husband's dwelling, and at still other periods of time they reside together in the wife's dwelling." My predecessor in office concluded that the question should be answered in the negative, that is, that both could not be "granted homestead tax exemption on dwelling houses maintained by each of them merely because they spend a large part of the time in their separate dwelling houses."[9]
As this office clarified in Attorney General Opinion 75-146, if both a husband and wife have established separate domiciles and residences, the Florida Constitution requires that the owner "maintain thereon the permanent residence of the owner." The Legislature has defined the words "permanent residence" in section 196.012(18), Florida Statutes, as:
 "that place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning. A person may have only one permanent residence at a time; and, once a permanent residence is established in a foreign state or country, it is presumed to continue until the person shows that a change has occurred."[10]
A determination of whether a person is maintaining his or her permanent residence on certain property is, within the above statutory guidelines, a question of fact to be determined in the first instance by the property appraiser.[11] The property appraiser is limited to a determination of whether separate residences have in law or in fact been established and a determination that the property is the permanent residence of the owner. Section 196.015, Florida Statutes, sets forth relevant factors in making those determinations.
Section 6(b) of Article VII, Florida Constitution, presents an additional matter for consideration. The constitutional provision states that "[n]ot more than one exemption shall be allowed any . . . family unit. . . ." Thus, the question of whether a husband and wife who have each established bona fide separate permanent residences, but who are still married, may represent one "family unit" within the scope of Article VII, section 6(b). As my predecessor in office concluded in Attorney General Opinion 75-146, "upon establishment of separate, bona fide permanent residences, the husband and wife may also establish separate family units so that Art. VII, s. 6(b), supra, would not preclude granting homestead ad valorem tax exemption to the permanent residence of each." The opinion recognized that it was not essential that the husband and wife be "legally separated" in determining whether they have also established separate family units, for the marriage relationship continues to exist even though the husband and wife may be legally separated.[12] That opinion does caution, however, that if one spouse should continue to maintain the home of the other, as evidenced by making payments on the mortgage and for insurance and taxes, it would not appear that the spouses have established separate family units.[13]
In sum, it is my opinion that a county property appraiser may grant a homestead exemption to both applicants when a married woman and her husband own two separate residences if each taxpayer establishes the right thereto, that is, if each can establish ownership of the home, residence therein, and the making of such residence as the permanent home in good faith. The property appraiser must make this determination from an objective evaluation of the surrounding facts and circumstances.
Sincerely,
 Charlie Crist Attorney General
CC/tgh
[1] 288 So. 2d 196, 199 (Fla. 1973). And see Op. Att'y Gen. Fla. 03-11 (2003).
[2] Id.; Ops. Att'y Gen. Fla. 52-158, p. 347 (1952) and 02-19 (2002).See also 12D-7.007(1), Fla. Admin. Code, which provides that "[f]or one to make a certain parcel of land his permanent home, he must reside thereon with a present intention of living there indefinitely and with no present intention of moving therefrom."
[3] See, e.g., Schooley v. Judd, 149 So. 2d 587 (Fla. 2nd DCA 1963),cert. den. 155 So. 2d 615, rev'd on other grounds, 158 So. 2d 514 (Fla. 1963); Op. Att'y Gen. Fla. 02-19 (2002).
[4] Id.
[5] See, e.g., Op. Att'y Gen. Fla. 57-327, p. 393 (1957).
[6] See Op. Att'y Gen. Fla 51-34, p. 346 (1951), 52-158, p. 347 (1952) and 63-09 (1963).
[7] 158 So. 2d 514 (Fla. 1963), rev'd 149 So. 2d 587 (Fla. 2nd DCA 1963).
[8] Cf., Ashmore v. Ashmore, 251 So. 2d 15 (Fla. 2nd DCA 1971), cert.dismissed, 256 So. 2d 513 (Fla. 1972).
[9] Op. Att'y Gen. Fla 64-05 (1964). And see Op. Att'y Gen. Fla 75-146 (1975).
[10] And see s. 196.015, Fla. Stat., providing relevant factors in a determination by the property appraiser of intent to establish a permanent residence in this state:
"(1) Formal declarations of the applicant.
(2) Informal statements of the applicant.
(3) The place of employment of the applicant.
 (4) The previous permanent residency by the applicant in a state other than Florida or in another country and the date non-Florida residency was terminated.
 (5) The place where the applicant is registered to vote.
 (6) The place of issuance of a driver's license to the applicant.
 (7) The place of issuance of a license tag on any motor vehicle owned by the applicant.
 (8) The address as listed on federal income tax returns filed by the applicant.
 (9) The previous filing of Florida intangible tax returns by the applicant."
[11] See s. 196.015, Fla. Stat., and Ops. Att'y Gen. Fla 75-146 (1975), 74-115 (1974), 72-154 (1972), 69-37 (1969), 58-329 (1958).
[12] See Op. Att'y Gen. Fla. 71-228 (1971).
[13] See Op. Att'y Gen. Fla 70-154 (1970).