Cox *vs.* Adams.

No. 23.—James B. Cox, plaintiff in error *vs.* Patrick Adams,
defendant in error.

[1.] A makes his note at Columbus, Georgia, payable generally to B, or bearer.  B
transfers it to C by delivery, and C indorses it to D.  C *held* to be an indorser, and
not a guarantor.

[2.] In a suit by D, the indorsee, against C the indorser, the possession of the note, held
*prima facie* evidence of the delivery of it by B to C.

[3.] Each indorsement is a new contract, and the contract of indorsement as to its
nature, construction and interpretation is governed by the *Lex Loci contractus;* and
the remedies thereon by the law of the place where the suit is instituted.

Johnson & Williams, for plaintiff in error.

The indorsement is a contract of guaranty.  2 *Root R.* 225;
*Hotchkiss*, 440, 441.

In support of the second assignment.  *Stephens*, 304; 2 *Kent*, 456,
460; 17 *Johns. R.* 511; 5 *East. R.* 124; *B. & P.* 188; 3 *T. R.* 77;
1 *Swift*, 323; 4 *Johns. R.* 285.

In support of the third assignment.  If a party is entitled to a
charge he ought to have it direct and positive.  7 *Cranch,* 506; 2
*Peters Dig.* 138.  The issue was supported by the testimony and
therefore the charge should have been given.  *Rules of Pleadings.*

Hines Holt, for defendant in error in reply.

*By the Court*—Nisbet, J, delivering the opinion.

The promissory note upon which the action in the Court below
was brought, was made by Thomas Flemming at Columbus, (with-
out further designation of place,) on the 15th of April, 1840.  It
is payable *generally*, one day after date, to William Hargrove *or
bearer.*  It was negotiated, by delivery, to the defendant Cox, and
by him indorsed to the plaintiff.  The action was brought against
the indorser Cox, by Patrick Adams, his indorsee.  The defen-
dant pleaded that he indorsed the note in the State of Alabama,
where the payee, Hargrove, resided at the time; that he, the
defendant, also at the time of the indorsement, lived in that State,
and that by the laws of Alabama, the liability of the indorser is
conditional; that is, he is liable only when the maker is sued to
insolvency.  The plaintiff read in evidence the note and indorse-

Cox *vs.* Adams.

ment thereon, and closed his case; when the defendant proved, that the indorsement was made in the State of Alabama, and after the note had been made and delivered to Hargrove — that he, (the defendant,) and Hargrove resided in Alabama at the time of making and at the time of indorsing the note, and that the maker of the note, Flemming, and the plaintiff, lived in the State of Georgia. He also read in evidence certain acts of the Legislature of Alabama and an adjudication of the Supreme Court of that State, declaratory of the law of that State, regulating indorsements, and in support of the plea. Here the parties rested the case. Upon this state of the facts several very important questions were made before the Court below, and which are now before us for review. Before entering, however, upon the consideration of the points made by the defendant's plea, I notice the demurrer to the writ which was overruled by the presiding Judge, and is also brought here for revision.

The defendant, demurring, said— The plaintiff's writ discloses [1.] that the note sued on is made payable to bearer, and is negotiable by delivery — that by delivery it came into the hands of Cox, the defendant, and was by him indorsed in blank; that this indorsement was a contract of guaranty, and ought to have been declared upon as such; that the plaintiff, has sued the defendant as an indorser, and therefore the writ is demurrable. We differ from the learned counsel and believe with the presiding Judge. We think the plaintiff justly conceived his action, and that the demurrer was properly overruled. This note was negotiable by the payee either by indorsement or delivery at his option. If he had transferred it by indorsement, he would have thereby incurred whatever liability ordinarily devolves upon an indorser under such circumstances; he however negotiated the note to Cox, by delivery, in the usual course of trade and for value, whereby Cox acquired the same interest in the note which the payee held, and assumed the same relative position to the maker; the title to the note was in him by delivery, and it being made payable *to bearer*, he became as holder, entitled to transfer it just as the payee might have done by delivery or by indorsement. Having elected to indorse, the pleader was bound to recognise him in the character which the law gives him, and that is the character of indorser. The rule is laid down by Story in these words: " If the bill is negotiable, then the mode of transfer depends upon the manner in which the bill is originally made negotiable. If it is payable to

the bearer, then it may be transferred by mere delivery, but although it may be thus transferred by mere delivery, there is nothing in the law which prevents the payee of a bill payable to himself or bearer, from transferring it if he chooses, by indorsement. In such a case he will incur the ordinary liability of an indorser, from which in case of a mere transfer by delivery, he is ordinarily exempt." *Bank of England* vs. *Newman,* 1 *Ld. Raymond,* 442; *Brush* vs. *Reeves' Adm'rs.* 3 *Johns. R.* 439; *Chitty on Bills, ch.* 6, *p.* 219, *Idem p.* 267, 8 *ed.;* 1 *Selwyn. N. P. Bills of Exchange,* 342, 10 *ed ; Story on Bills, sec.* 200.

[2.] The error next charged upon the Court below, is founded upon its refusal to instruct the jury according to the request of counsel for the defendant, that *some evidence of the delivery of the note by Hargrove the payee, to Cox the . defendant, was necessary to enable the plaintiff to recover.* We have before seen, and it were a useless waste of time to note authorities to so familiar a principle, that *delivery* of a note or bill payable to bearer, transfers the title. This position, indeed, the counsel for the plaintiff in error does not controvert, but contends that the delivery must be proved. We agree with him in this, that to make out the title of the plaintiff in this cause, some evidence of delivery to Cox is indispensable. That evidence was had. The plaintiff is in possession of a note indorsed to him — being made payable *to bearer* — he brings suit against the indorser, averring the delivery by the payee to him, and also asserting his own title, derived immediately through the indorsement. The note is read to the jury. Now we hold that the note itself, in the hands of the plaintiff, is *prima facie* evidence of the plaintiff's title; it is *prima facie* proof of the delivery to Cox. The custody of the note would be evidence of delivery in an action by Cox against the maker. So also, by reason of that fact, is it evidence of delivery to him in this suit, charging him as indorser. *Story on Bills, secs.* 415, 416; *Chitty on Bills,* 8 *ed.* 425, 428, 429.

We understand that the request to the presiding Judge was, that he should instruct the jury that other and further evidence than what the note itself afforded, of its delivery by Hargrove, the payee, to Cox, was necessary before the plaintiff could recover. So understanding the request, and believing that the Court below so understood it, we have no hesitation in declaring our judgment that he did right in declining to comply. See also, upon this point, *Chitty on Bills,* 10*th Am. ed.* 636; *Per Lord Mansfield, Doug.* 632; *King* vs. *Milsom,* 2 *Camp.* 5.

In the further prosecution of this cause in the Court below, the Court was asked by counsel for the defendant upon the case made by the pleadings, to instruct the jury that if the indorsement was made in Alabama, the liability of the defendant was to be regulated by the law of the place where made.  The Court refused to instruct the jury in accordance with this request, but did instruct them that, if the note was made in Georgia, the contract of indorsement was to be regulated by the laws of Georgia, though made in Alabama, unless it was stipulated otherwise between the parties.  To the charge given, and also to the refusal of the Court to charge as requested, the defendant excepted.  The most serious question made in this record is the one thus presented.  Serious, not so much on account of its inherent difficulties, for we consider the authorities clear upon the point, but because we are now to settle a rule by which numerous contracts and large interests, in this and our sister and adjoining States are to be governed.  The record establishes the following facts, to wit, the note is payable generally, the maker resided in Georgia when it was made, the indorsement was made in Alabama, the payee and indorser lived in Alabama at the time the indorsement was made, and, by the laws of that State, this indorser would not be liable unless the maker was sued to the first court after the note fell due, and not liable until the maker was sued to insolvency.

In the outset of this discussion we distinguish between reme- [3.] dies, (the mode of proceeding, in order to ⁓enforce contracts,) and the character and construction of them.   As to remedies upon contracts and their incidents, they are regulated and pursued according to the law of the place where the action is instituted.   " Actor sequitur forum rei."  This principle is part of the jus gentium.  " The reasons for this doctrine, (says Mr. Story,) are so obvious that they scarcely require any illustration.   The business of the administration of justice by any nation is, in a peculiar and emphatic sense, a part of its public right and duty.   Each nation is at liberty to adopt such forms and such a course of proceeding, as best comport with its convenience and interests and the interests of its own subjects, for whom its laws are particularly designed.  The different kinds of remedies, and the modes of proceeding best adapted to enforce rights and guard against wrongs in any nation, must materially depend upon the structure of its own jurisprudence.   What would be well adapted to the jurisprudence, either customary or positive, of one nation, for rights which it re-

cognised, or duties which it enforced, or for wrongs which it re-dressed, might be wholly unfit for that of another nation, either as having gross defects, or steering wide of the appropriate remedial justice. The jurisprudence of one nation may be very refined and artificial, with a multitude of intricate and perplexed proceed-ings; that of another may be rude, uninformed, and harsh, consist-ing of an undigested mass of usages. It would be absolutely im-practicable to apply the process and modes of proceeding of the one nation to the other. Besides, there would be an utter confusion in all judicial proceedings, by attempting to engraft upon the reme-dies of one country, those of all other countries whose subjects should be parties or be interested therein. All that any nation can, therefore, be justly required to do, is to open its own tribunals to foreigners in the same manner and to the same extent as they are open to its own subjects, and to give them the same redress, as to rights and wrongs, which it deems fit to acknowledge in its own municipal code for natives and residents." *Story's Conflict of Laws*, sec. 557; 2 *Kent* 461; 5 *Clark & Finnelly R.* 1, 13, 14; 10 *Barn. & Cress.* 903; 1 *Barn. & Adol.* 284; 2 *Scott*, 304; 1 *Hodges*, 206; 2 *Bing. N. C.* 202; 4 *Moore & Scott*, 328; 8 *Peters U. S. R.* 361; 3 *Gill & Johns.* 234; 4 *Cow. R.* 408; 2 *Burrow*, 1084; 2 *Mass.* 84; 14 *Johns. R.* 346; 2 *Rand. Virg. R.* 303; 13 *Peters R.* 378, 379. We therefore say, that so far as concerns this contract, the law of this State, where the suit was instituted, governs the remedy.

Another proposition which we lay down is, that a contract to pay money generally, is a contract to pay any where. All debts between the original parties are payable every where, unless some special provision is made to the contrary. Debts have no *situs*, but accompany the creditor every where. The debtor may be sued in any jurisdiction, according to the forms of law which obtain in that jurisdiction, if he is therein resident. This suit was there-fore rightfully brought in Georgia, where the defendant resided when it was instituted. *Story's Conflict of Laws*, sec. 317; 13 *Mass. R.* 1, 6; 6 *Cranch.* 221. It must not be understood how-ever, that because a note is payable generally, and is therefore payable any where and suable in any jurisdiction, that as between the original parties even, the law of the forum in such a case, governs the contract. It is true, that a decision to this effect has been made in Massachusetts. That decision was made in *Bray-nard* vs. *Marshall*, *reported in* 8 *Pick. R.* 194. A negotiable note was made at New York between persons resident there, and was

payable generally, and the payee subsequently indorsed the note to a citizen of Massachusetts, by whom a suit was brought in the court of the latter State against the maker. One point in the case was, whether a discharge of the maker under the insolvent laws of New York, operated as a bar to the suit: the court ruled that it did not; "that it was a debt payable any where by the very nature of the contract, and it is a promise to whomsoever shall be the holder of the note."

The court in Massachusetts appears to have reasoned thus :—A note made in one country and payable in another country, is governed by the law of the place where payable, and inasmuch as a note payable generally is payable any where, the law of that place where its payment is sought to be enforced, governs. The reasoning is not sustained by authority. The case in Massachusetts was between an indorsee and the maker. The transfer of the note, as to the *maker* or the *acceptor*, is not a new contract, it is under and part of the original contract and springs up from the law of the place where that contract was made. The rights of the indorsee spring from and are a component part of the original contract; the indorsement is but a substitution of the indorsee for the payee, and it transfers over to him the old liability of the maker. A contract to pay generally is governed by the law of the place where it is made, *for the debt is payable there as well as in every other place. Story's Conflict of Laws, sec.* 317 ; 2 *Barn. & Ald.* 301; 1 *Barn. & Cress.* 16 ; *Story on Bills, sec.* 167. The case of *Braynard* vs. *Marshall,* stands alone, so far as my research has gone in the English and American books, and is overruled in Massachusetts. *See* 13 *Mass. R.* 1 *to* 12, 20, 23, 24. Mr. Story in commenting upon the opinion of the court in that case says: "Such a doctrine has never been propounded in any Common Law authority, nor even been supported by the opinion of any foreign jurist." *Story on Bills, sec.* 168.

I have been thus particular in reviewing the authority referred to from Massachusetts, because it was relied upon by the able counsel for the defendant in error in this case. His position was, that this note being payable generally, and indorsed, the defendant, to wit, the indorser, was liable according to the law of the place, to wit, Georgia, where the suit was instituted ; and he read to sustain it *Braynard* vs. *Marshall.* We shall see too in the further discussion of this subject that the principles settled in that case, for other reasons, have no applicability to this.

Cox *vs.* Adams.

It is important, in the consideration of this cause, further to re-
peat the fact, that this was an action by the indorsee against the
indorser, in the State of Georgia, upon an indorsement made in
Alabama; and, to assert this position, *every indorsement is a new
contract.* It is an act similar in effect to making a new bill, the in-
dorser being in the nature of a new drawer. 2 *Kent,* 460; 17
*Johns. R.* 511; *Story's Conflict of Laws,* 261, 262; 1 *Wheat.
Selwyn. N. P.* 341; 1 *Atk.* 282; *Per Lord Mansfield,* 2 *Burow,*
674; *Per Lord Ellenborough,* 3 *East,* 482. The precise inquiry
which remains is, by what law is this contract of indorsement gov-
erned? by the law of the contract, or the law of the forum; by
the laws of Alabama or Georgia? I have endeavoured to dispose of
all collateral questions, so as to leave the field open for this one
only; being a single issue, and unencumbered, it will be the more
easily determined and illustrated. About it I have no doubt. In
the inquiry we need not err, for the way is easily traced by vestiges
of genius and learning left by Kent and Story. Among the aids
which these distinguished men have afforded the professional world,
is that of easy inquiry; we are not left to dig truth from beneath
masses of ignorance, to disencumber it of excessive learning, or hunt
it through centuries of changing systems and unstable government.
They have revealed her, in simple beauty, and majesty severe, even
to the professional wayfarer.

The laws of a country, as a general principle, have no binding
force beyond its territorial limits. Their authority is admitted in
other States, not *ex proprio vigore,* but *ex comitate;* not on account
of any inherent force in the law itself, beyond the limits of the
State which enacts it, but because of the comity of nations. Each
State has the unquestioned right to legislate upon the rights and
obligations of its own citizens, according to its own views of right
and expediency. So, also, every independent State will judge for
itself how far it shall or shall not admit the force of foreign laws
within its own territory. These principles, as well as those we
shall further declare in this opinion, are applicable to the States of
our own Union, so far as they are not modified by our peculiar
system—so far as the Constitution of the Union does not limit, re-
strain, or alter them. Subject to these limitations, the States of the
Union are independent sovereignties, and as such subject to that
part of the *jus gentium* which relates to contracts. The *comity* of
nations cannot be recognised as capricious—as depending upon
arbitrary whims or tyrannic impulses—it has grown into a system

Cox *vs.* Adams

whose sanctions are reason, religion, and the common interests of all, for the violation of which, States are amenable to the public sentiment of the world. The rules admitted by civilized States upon this subject, are founded not only in *convenience*, but *necessity;* without them commerce could not exist between States, civilization could not be advanced, or religion propagated. The whole system of agencies, purchases and sales, mutual credits, and transfers of negotiable instruments, depends upon the *jus gentium.* In fact nothing so much distinguishes civilized from savage States, as this *comity* of the nations. The beautiful language of the Institute of Justinian, touching this subject, is well worth perpetuating upon the records of our own jurisprudence. "*Jus autem gentium, omni humano generi commune est; nam, usu exigente et humanis necessitatibus, gentes humanœ jura quœdam sibi constituerunt. Et ex hoc jure gentium, omnes pene contractus introducti sunt, ut emptio et venditio, locatio et conductio, societas, depositum mutuum, et alii innumerabiles.*" 1 *Inst. Lib.* 1, *tit.* 2, *sec* 2.

The first proposition we assert is this—as a general rule the *validity* of a contract is to be decided by the law of the place where it is made; if valid there, it is by the general law of nations held valid every where, by the tacit or implied consent of the parties. *Story's Conflict of Laws, sec.* 241 ; 2 *Mass.* 88, 89; 1 *Peters C. C. R.* 317; 2 *Kent*, 457, 458, 3 *ed.;* 2 *Har. & Johns. R.* 193, 221, 228; 3 *Conn. R.* 253 ; 2 *New Hamp. R.* 42 ; 1 *Bing. N. C.* 151, 159 ; 13 *Peters R.* 65; 11 *Louis. R.* 465 ; 8 *Martin R.* 95; 8 *Peters R.* 361, 372.

The same rule applies to the invalidity of contracts, *vice versa.* If void or illegal by the law of the place of the contract, they are *generally* held void and illegal every where. This principle is founded in the elements of natural justice. If a contract be *void* in its origin, it is inconceivable how validity can be given to it in any other country. It is no contract from the beginning, and no act of foreign legislation can give vitality to it. The Civil Code thus expounds the rule: "*Nullum enim pactum, nullam conventionem, nullum contractum, inter eos videri volumus subsecutum, qui contrahunt lege contrahere prohibente.*" 1 *Gallis. R.* 375; 2 *Mass. R.* 88, 89; 1 *Nott & McCord*, 173 ; 2 *Har. & Johns. R.* 193, 221, 225; 2 *Johns. Cas.* 355; 2 *Burrow*, 1077; 2 *Stra.* 732 ; 7 *Term R.* 237; 2 *Kent*, 457, 458, 3 *ed.;* 2 *Mason R.* 459; 13 *Peters R.* 65, 78.

Again the *lex loci contractus*, controls the *nature, construction* and *interpretation* of contracts. 2 *Kent*, 454; *Institute* 1, 2, 2;

*Pardessus Droit Commercial, Tome 5, p.* 1482; 3 *Gill. & Johns.* 234, and authorities cited under the last two heads.

The three last propositions as we believe, cover all the principles involved in this cause. If the *nature, validity* and *interpretation* of a contract depend upon the law of the contract, we might close this discussion with the declaration, that the nature of this contract of indorsement, that is to say, the nature and extent of the rights and obligations of the parties to it, are to be controlled by the laws of Alabama where it was made, and that the contract must be interpreted by the same laws. To these propositions however, there are exceptions; though true generally, yet they are not true universally. The exceptions extend to contracts made in one State, which are injurious to the *public rights,* or *offend the morals,* or *contravene the policy,* or *violate the public law* of another State. In case of all such contracts, they cannot by the *jus gentium* be enforced in a foreign State. 2 *Kent,* 458; 1 *Gall. R.* 371; 1 *Mason R.* 381; 6 *Mass. R.* 358; 13 *Martin R.* 202; 13 *Mass.* 1; 1 *Johns. Cas.* 139; *Story's Com. Conflict of Laws,* 203, 215.

It cannot be contended that the law of Alabama, which charges the indorser only when the maker is sued to insolvency, and only if sued at the first court after the maturity of the note, is injurious to the public rights of Georgia, or offends her morals, or contravenes her policy, or violates any public law. This case is not within the exceptions.

Another principle applicable to this cause is this, parties are presumed to contract in reference to the laws of the country in which the contract is made. 2 *Kent,* 458; 6 *Wharton,* 331; 8 *Paige's R.* 446, 525; 9 *N. H. R.* 271; 2 *Metcalf, R.* 8; *Story on Bills,* 184, 188. The indorser is presumed to have put his name upon this paper, with an eye to his liability under the laws of Alabama, and the indorsee received it with a presumed knowledge and an implied recognition of those laws; they in fact enter into and constitute a part of the contract; and now that he is admitted into the Courts of Georgia to enforce his contract, he is estopped from denying the binding force of the Alabama law. By denying *that,* he denies his own contract. As before stated, we might safely place our judgment upon the general principles already referred to. I shall however apply them briefly to the facts of this case and refer to some authorities bearing directly upon it; authorities which settle the principle that *an indorser of a negotiable bill or note, is liable according to the law of the place where the indorsement is made.*

This, it is true, is only a re-assertion of the general principle already stated. Yet the authorities I allude to, apply the principle directly to this cause. The rule we have seen is, that the *lex loci* controls the contract. If this action was against the maker of this note in favour of the indorsee, in the State of Alabama, the law of Georgia and not of Alabama would prevail; because it was made in Georgia. Suppose that the maker had been discharged under the insolvent laws of this State, and moving into Alabama, was there sued; it cannot be questioned but that his discharge could be successfully pleaded in that State. This was the point made, as we have had occasion before to remark in the Massachusetts case, and the plea was overruled; but that case and the principle asserted by it, have been over and over again repudiated. Nor would the fact that the note is payable generally, make any difference; the indorsement of such a note creates no new contract as between the indorsee and the maker; it only transfers the old liability. And inasmuch as the note being payable every where, is thereby payable in Georgia, the maker is liable according to the laws of Georgia. It would indeed be a hard case upon the maker, to hold him liable all over the world, as variously as there are in it different jurisdictions.

But it is said that all this may be true, as between the holder and maker of a note, or acceptor of a bill, yet not true as between the holder and the indorser. That the indorser of this note assumed the liability of the maker, and he being liable according to the laws of Georgia, therefore the indorser is liable according to the laws of Georgia. This seems to have been the view of this cause taken by the Court below. If the indorser only assumed the old liability of the maker, then the conclusion arrived at by the presiding judge is a sound one. But this is not true. The indorsement *was a new contract;* and the law of *the place of that contract* governs it. It is as much under the operation of the rules hereinbefore promulgated, as if it was a primary original contract. In commenting upon the case of Braynard *vs.* Marshall, founded upon a note payable generally, Mr. Story says that the indorsement of that note was a contract between the indorsee and his indorser, subject to the law of the place where made. *Story on Bills, sec.* 167. It is true that in this case the indorser adopts the place of payment by his indorsement; that place is every where, and as much in Alabama as any other place; and, because the note is

Cox *vs.* Adams.

payable in Alabama, the case constitutes no exception to the rule that the *lex loci contractus* obtains.

In a note to his own text, Chancellor Kent remarks as follows: "It may be laid down as a general rule, that negotiable paper of every kind is construed and governed, as to the obligation of the drawer and maker, by the law of the country where it was drawn or made; and as to that of the acceptor by the law of the country where he accepts; and *as to that of the indorsers by the law of the country in which the paper was indorsed.*" 2 *Kent,* 460, 5 *ed. note.* This *dictum* of Chancellor Kent is supported by the following authorities: *Potter* vs. *Brown,* 5 *East R.* 124; 9 *Barn. & Cress.* 208; 2 *Bell's Com.* 692, 3; *Slocum* vs. *Pomeroy,* 6 *Cranch R.* 221; *Orey* vs. *Winter,* 16 *Martin's Louis. R.* 277; 13 *Mass.* 1; *Pardessus Cours de Droit, tom.* 5, *secs.* 1497, 1499; 7 *Ala. R.* 120.

One of the illustrations of the operation of the *lex loci contractus,* given by Mr. Story, is the case now being considered. "By the general commercial law, (says Mr. Story,) in order to entitle the indorsee to recover against any antecedent indorser upon a negotiable note, it is only necessary that due demand should be made upon the maker of the note at its maturity, and due notice of the dishonour given to the indorser. But, by the laws of some of the American States, it is required in order to charge an antecedent indorser, not only that due demand should be made and due notice given, but that a suit shall be previously commenced against the maker and prosecuted with effect, in the country where he resides; and then, if payment cannot be obtained from him under the judgment, the indorsee may have recourse against the indorser. In such a case it is clear, upon principle, *that the indorsement, as to its legal effect and obligation, and the duties of the holder, must be governed by the law of the place where the indorsement was made.*" *Story on Bills, sec.* 157; see also *Story on Conflict of Laws, sec,* 316 *b; Williams* vs. *Wade,* 1 *Metcalf R.* 82, 83; *Bayley on Bills,* 84. Upon principle, therefore, and upon direct authority, we feel constrained to reverse this judgment.