WALTER I. HERRON AND CHARLES W. RAMM HERRON, AN
INFANT, BY WALTER I. HERRON, HIS GUARDIAN *ad litem*,
*Appellants*, v. EMIL E. PASSAILAIGUE, *Appellee*.

Division B.

Opinion Filed October 27, 1926.

Petition for Rehearing Denied December 6, 1926.

1. A State court is not bound by a decree of divorce granted
in another state if the record in the foreign court shows
no personal service on the defendant and no appearance by
him. The court may, however, by comity, be required to
give it force and effect unless there is some good and valid
reason to the contrary.

2. Comity is defined as the practice by which one court follows
the decisions of another court on a like question, though
not bound by the law of precedents to do so.

3. The rules of comity may not be departed from, unless in
certain cases for the purpose of necessary protection of our
own citizens, or of enforcing some paramount rule of public
policy.

4. The very basis of comity is the principle that we ought to
give the decrees of other states that force and effect which
we would wish them to give ours, but neither the full faith
and credit clause or the rule of comity prevent a collateral
attack on a foreign judgment for the purpose of determining
the applicability of either.

5. The right of every state under the Constitution of the United
States to regulate the matter of marriage and divorce within
its own borders and to defend it against encroachment, and
to fix and declare the matrimonial status of its own citizens
is well settled, and the full faith and credit provision of the

Constitution of the United States is not to be construed so as to defeat this right.

6. There are cases in this country which hold that the domicile of the husband is also the domicile of the wife, and that she could have no other, but the great weight of authority supports the rule that when it becomes proper or necessary, a wife may acquire a separate domicile from that of her husband for the purpose of a suit for divorce by her.

7. The rule is well settled that the term "residence," "residing" or equivalent terms, when used in statutes or actions or suits relating to taxation, right of suffrage, divorce, limitations of actions and the like are used in the sense of "legal residence"; that is to say, the place of domicile or permanent abode as distinguished from temporary residence.

8. The granting of divorces is a proper subject for legislation when either of the parties at the time of the divorce is a resident of, or domiciled within the territorial jurisdiction of the legislature.

9. The general rule governing the comity of nations is that in a proper case the laws and judicial proceedings of one state will be enforced in another state provided they do not involve anything immoral, contrary to general policy, or violative of the conscience of the state called upon to give them effect.

10. The finding of the fact of domicile, or residence for the purpose of domicile, by the court making the decree raises a very strong presumption that it existed. After a lapse of time and especially after the rights of other persons have intervened on the faith of the decree, the clearest and most satisfactory proof should be required to overcome the presumption.

11. When the record of a foreign divorce proceeding does not purport to be a copy of the "complete record of all the proceedings and papers in said cause" and no fraud is charged

and the right to the divorce is not denied, nor is it charged that the law, policy or morals of this state have been violated in connection with granting the divorce and the divorce is based on a ground valid in this state and the chancellor decreed the law and the evidence to be in favor of the one seeking the divorce, this court will assume that the chancellor passed on the question of domicile, accrual of the cause of action, residence and the sufficiency of the service as required in the foreign state and will give the divorce effect by comity in this state.

An Appeal from the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Reversed.

*D. C. McMullen* and *L. King Carruthers*, for Appellant.

*MacFarlane, Pettingill, MacFarlane & Fowler*, for Appellee.

TERRELL, J.—The amended bill of complaint submitted in this cause March 2nd, 1925, among other things alleges that on and prior to July 24th, 1918, Charles W. Ramm lived in Charleston, South Carolina, and was possessed of an estate valued at more than forty thousand dollars ($40,-000.00); that the said Charles W. Ramm left a last will and testament duly probated whereby he devised all his estate to his widow, Annie D. H. Ramm, for her natural life, with power of disposal for investment or re-investment, and at her death to Florrie Amelia Ramm, a legally adopted daughter. Annie D. H. Ramm was named as executrix in said will, to which position she qualified and continued to act till her death on February 7th, 1924.

The bill further alleges that complainant, Emil E. Passailaigue and Florrie Amelia Ramm were married in

Charleston, South Carolina, November 30th, 1907, and that he (complainant) continued to be the lawful spouse of said Florrie Amelia Ramm until January 2nd, 1924, when she died intestate leaving as her heir at law the complainant and her son Charles W. Ramm Herron; that under the law of South Carolina the right of complainant in the estate of his deceased wife would be an undivided one-third interest in fee, but that since the assets of the estate of Charles W. Ramm had been converted into money and invested in Florida the title thereto by descent is governed by the laws of Florida (Sec. 3618, Rev. Gen. Stats. of Fla., 1920), under which complainant would inherit one-half, and Charles W. Ramm Herron the other half.

It is also alleged in the bill that while acting as executrix of the estate of Charles W. Ramm, the said Annie D. H. Ramm moved to Florida and invested the money derived from the assets of said estate in Tampa realty; that at her death she left a last will and testament devising all the said property to her grandson, the defendant Charles W. Ramm Herron, conditioned on his arrival at the age of twenty-one years, and in case he died before reaching that age said property should be equally divided between her nephew George Feran, Sophia Feran and the defendant Walter I. Herron, and that she named the said Walter I. Herron executor of her said last will with full power to convey all the estate left by the said will in his hands.

The bill prays that it be decreed that Annie D. H. Ramm took only a life estate under the will of Charles W. Ramm, with power of disposition for the purpose of investment and re-investment, and that at her death the remainder in her possession became the absolute property of the said Florrie Amelia Passailaigue (nee Ramm); that the complainant Emil E. Passailaigue be entitled to an undivided one-half interest in all the property so remaining in the

possession and control of said Annie D. H. Ramm by in-
heritance from the said Florrie Amelia Passailaigue, and
that an accounting be taken by order of the court to deter-
mine what amounts were due complainant from rents and
property already disposed of by Annie D. H. Ramm that
she purchased with the proceeds of the estate of the said
Charles W. Ramm.

The answer admits most of the material allegations of the
bill, but resists the relief sought by complainant Passail-
aigue on the ground that Florrie Amelia Passailaigue ob-
tained a decree of divorce from her husband, the said Emil
E. Passailaigue, on the 19th day of February, A. D. 1916,
in the First Judicial District Court of Caddo Parish, State
of Louisiana, by which said decree of divorce the bonds of
matrimony between them was forever dissolved and the
said Florrie Amelia Passailaigue was authorized to assume
her maiden name. Following the answer, by leave of the
court first had, complainant amended his amended bill of
complaint by attaching thereto a certified copy of the rec-
ord of the divorce proceedings in Louisiana whereby Flor-
rie Amelia Passailaigue was divorced from Emil E. Passail-
aigue, the appellee in this cause. Defendants demurred to
the amended bill as' amended. The demurrer was over-
ruled, and this appeal is from the order overruling said
demurrer.

Analysis of the foregoing facts discloses that the ques-
tions raised in this case turn on the validity of the divorce
granted in Louisiana.

The defendant's demurrer was overruled on the theory
that the Louisiana divorce in this State was ''of no force
as to complainant's property rights under the allegation of
the bill of complaint.'' The effect of the ruling on the
demurrer was to hold that the courts of this State would
not by comity recognize the validity of a decree of divorce
obtained in another State on the showing made in the

amended bill of complaint as amended. Appellants admitted at the bar that no claim to validity was made as to the Louisiana divorce under the full faith and credit clause of the Federal Constitution, but they contended earnestly that it should be given effect here under the rule of comity

Section One of Article IV of the Federal Constitution requires that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. Congress may prescribe the effect of such acts, records and judicial proceedings and the manner in which they may be proven. Pursuant to this provision of the Federal Constitution, the Federal law requires that State courts recognize the judgments of the courts of other States to the same extent as it does its own (U. S. Comp. St. Par. 1519); but a State court is not bound by a decree of divorce granted in another State if the record in the foreign court shows no personal service on the defendant and no appearance by him. The court may, however, by comity, be required to give it force and effect unless there is some good and valid reason to the contrary. Davis v. Davis, 17 Colo. 37, 197 Pac. Rep. 241; Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. Rep. 525; Felt v. Felt, 59 N. J. Eq. 606, 45 Alt. Rep. 105, 49 Atl. Rep. 1071, 47 L. R. A. 546; Gildersleeve v. Gildersleeve, 88 Conn. 689, 92 Atl. Rep. 684; DeBouchel v. Candler, 296 Fed. Rep. 482.

Bouvier defines comity as the practice by which one court follows the decisions of another court on a like question, though not bound by the law of precedents to do so. In Hilton v. Guyot, 159 U. S. 113, 40 L. Ed. 95, 16 Sup. Ct. Rep. 139, the Supreme Court of the United States defined comity as neither a matter of absolute obligation nor of mere courtesy and good will, but it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience,

and to the rights of its own citizens or of other persons who are under the protection of the laws.

In Guarantee Trust & Safe Deposit Co. v. Philadelphia, R. & N. E. R. Co., 69 Conn. 709, 38 Atl. Rep. 792, 38 L. R. A. 804, the court held that the rules of comity may not be departed from, unless in certain cases for the purpose of necessary protection of our own citizens, or of enforcing some paramount rule of public policy. Vanbuskirk v. Hartford Fire Ins. Co., 14 Conn. 583, 586.

In his Conflict of Laws, paragraph 5, Minor recites what he conceives to be the exceptions to the application of the principle of comity as follows:

> "There may be five instances wherein it is generally considered that the municipal law of the state where the question is raised (lex fori) forbids the enforcement of a foreign law: (1) Where the enforcement of the foreign law would contravene some established and important policy of the state of the forum; (2) where the enforcement of such foreign law would involve injustice and injury to the people of the forum; (3) where such enforcement would contravene the canons of morality established by civilized society; (4) where the forum law is penal in its nature; and (5) where the question relates to real property."

It will thus be seen that while the Act of Congress of May 26th, 1790, (U. S. Comp. St., Par. 1519) as to full faith and credit requires us to recognize the judgment of other states to the same extent as we do our own, the very basis of comity in matters like this is the principle that we ought to give the decree of other states that force and effect which we would wish them to give ours, but neither the full faith and credit clause or the rule of comity prevent a

collateral attack on a foreign judgment for the purpose of determining the applicability of either.

No principle of law is better settled than this: The right of every state under the constitution of the United States to regulate the matter of marriage and divorce within its own borders and to defend it against encroachment, and to fix and declare the matrimonial status of its own citizens, and the full faith and credit provision of the constitution is not to be construed so as to defeat this right, nor is the provision applicable at all save to judgments rendered with jurisdiction which is the power to adjudge, and jurisdiction may be collaterally inquired into. De-Bouchel v. Candler, 296 Fed. Rep. 482; Davis v. Davis, 17 Colo. 37, 197 Pac. Rep. 241; Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. Rep. 525; Gildersleeve v. Gildersleeve, 88 Conn. 689, 92 Atl. Rep. 684; Pennoyer v. Neff, 85 U. S. 714, 24 L. Ed. 565.

It is contended by appellee that the divorce granted in Louisiana cannot be given effect by comity in this State because it is void for the following reasons: (1) It was not shown that Florrie Amelia Passailaigue ever acquired a domicile in Louisiana or that the acquisition of a separate domicile was compelled by Emil E. Passailaigue, her husband. (2) It was not shown that the alleged cause of divorce accrued after Florrie Amelia Passailaigue became a resident of Louisiana. (3) It was not shown that Florrie Amelia Passailaigue was married in Louisiana, that she had acquired a matrimonial domicile there, or that the cause of action accrued there.

There are cases in this country which hold that the domicile of the husband is also the domicile of the wife, and that she could have no other, but the great weight of authority supports the rule that when it becomes proper or necessary, a wife may acquire a separate domicile from

that of her husband for the purpose of a suit for divorce by her. The following cases apply this rule: Cheever v. Wilson, 9 Wall. (U. S.) 108, 19 L. Ed. 604; Hekking v. Pfaff, 82 Fed. Rep. 403; Chapman v. Chapman, 129 Ill. 386, 21 N. E. Rep. 806; Dunham v. Dunham, 162 Ill. 589, 44 N. E. Rep. 841, 35 L. R. A. 70; Hill v. Hill, 166 Ill. 54, 46 N. E. Rep. 751; Smith v. Smith, 43 La. Ann. 1140, 10 South. Rep. 248; Succession of Benton, 106 La. 494, 31 South. Rep. 123; Harding v. Alden, 9 Greel. (Me.) 140, 23 Am. Dec. 549; Harteau v. Harteau, 14 Pick. (Mass.) 181, 25 Am. Dec. 372; Frary v. Frary, 10 N. H. 61, 32 Am. Dec. 395; Ditson v. Ditson, 4 R. I. 87; DeBouchel v. Candler, 296 Red. Rep. 482; Schouler on Marriage, Divorce, Separation & Domestic Relations, Vol. 2 (6th ed.) 1751. In Cheever. v. Wilson, *supra*, the Supreme Court of the United States stated the rule as follows: The rule is that she may acquire separate domicile whenever it is necessary or proper that she should do so. The right springs from the necessity for its exercise and endures as long as the necessity continues. The proceedings for a divorce may be instituted where the wife has her domicile. The place of the marriage, of the offense and the domicile of the husband are of no consequence.

The bare comment made on this rule by the Supreme Court of the United States was: "It is so well settled that it would be idle to discuss it."

Some of the courts go so far as to say that from the time of delictum which would justify the wife in leaving her husband, she should be treated as a person who has the right to fix her own domicile, and the husband should not be permitted to assert this fiction of law against her. Burtis v. Burtis, 161 Mass. 508, 37 N. E. Rep. 740.

The rule announced in Cheever v. Wilson, *supra*, and supported by the authorities there cited, is unquestionably

the reasonable one and is approved by this court. We have read carefully all the Louisiana cases cited, in briefs of appellants and appellee, besides many others, and while isolated statements in some of them are a little difficult to reconcile, there seems to be no doubt that the rule here approved is the rule in that State. In Mathews v. Mathews, 157 La. 930, 103 South. Rep. 267, some of the Louisiana cases as they apply to this case are discussed and reconciled. See also Lepenser v. Griffing, 146 La. 584, 83 South. Rep. 839, and Smith v. Smith, 43 La. Ann. 1140, 10 South. Rep. 248; Cooley's Const. Lim. (4th ed.) 502; Barber v. Barber, 21 How (U. S.) 582, 16 L. Ed. 226.

It seems to be well-settled law in Louisiana that neither separation from bed and board or divorce can be had by either spouse for a cause which arose prior to the acquisition of the Louisiana domicile. Mathews v. Mathews, *supra*. But in the instant case the record shows that while the ground for divorce had its origin in the State of South Carolina it continued after domicile or residence for the purpose of domicile was acquired in Louisiana. This was evidently the view of the chancellor granting the divorce.

On the question of whether or not Mrs. Passailaigue had acquired her domicile in Louisiana at the time her petition for divorce was filed the petition alleges that she was "residing" in Caddo Parish, Louisiana. Appellant contends that "residing" in Caddo Parish is not the equivalent of a "domicile" there. In this connection appellee does not seem to be supported by the authorities. The rule is well settled that the term "residence," "residing" or equivalent terms, when used in statutes or actions or suits relating to taxation, right of suffrage, divorce, limitations of actions and the like are used in the sense of "legal residence"; that is to say, the place of domicile or permanent abode as distinguished from temporary residence. Downs

v. Downs, 23 App. Cas. D. C. 381; Hamill v. Talbott, 81 Mo. App. 210; Graham v. Graham, 9 N. D. 88, 81 N. W. Rep. 44; Michael v. Michael, 34 Tex. Civ. App. 630, 79 N. W. Rep. 74; DeMeli v. DeMeli, 120 N. Y. 485, 24 N. E. Rep. —, 17 Am. S. Rep. 652; McShane v. McShane, 45 N. J. Eq. 341, 19 Atl. Rep. 465; Brundred v. Del. Hoyo, 20 N. J. L. 328; Connolly v. Connolly, 33 S. D. 346, 146 N. W. Rep. 581; Miller v. Miller, 88 Vt. 134, 92 Atl. Rep. 9; Barber v. Barber, 151 N. Y. S. 1064, 89 Misc. Rep. 519; Fleming v. Fleming, 36 Nev. 135, 134 Pac. Rep. 445; Sneed v. Sneed, 14 Ariz. 17, 123 Pac. Rep. 312; Cohen v. Cohen, 3 Boyce (26 Del.) 361, 84 Atl. Rep. 122; Gildersleeve v. Gildersleeve, 88 Conn. 689, 92 Atl. Rep. 684; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations (6th ed.) 1748.

It is next contended that the Louisiana divorce is void because the court did not acquire jurisdiction of the defendant Emil E. Passailaigue.

In suit for divorce in Louisiana where the defendant is absent from the State, service is made on such absent defendant by virtue of Act No. 296 of 1910 of the Laws of that State, which reads:

"That in any action for separation from bed and board or divorce, where defendant is absent from the state, or in case of reconvention, where the plaintiff is absent from the state; and in actions for divorce based on a judgment of separation from bed and board when the adverse party is absent from the state, the court having jurisdiction over the cause shall, upon application by any party in interest, appoint a *curator ad hoc* to represent such absent party, and all proceedings shall be had contradictorily with said

> curator *ad hoc,* and any judgment or divorce may
> be rendered against said curator *ad hoc* as might
> be rendered against his principal as if he were
> present in person in open court.''

The record here shows that a *curator ad hoc* was regularly appointed to represent Emil E. Passailaigue, and the plain provisions of the act are that any judgment may be rendered against him as might be rendered against the principal if he were present in court.

Since each State has the unquestioned right under the Constitution of the United States to regulate the question of marriage and divorce within its own borders and to defend it against encroachment, and to fix and declare the matrimonial status of its own citizens, we think it well within the power of the State of Louisiana to adopt the act so quoted as a means of reaching with process, absent defendants in divorce suits. The granting of divorces is a proper subject for legislation when either of the parties at the time of the divorce is a resident of, or domiciled within the territorial jurisdiction of the legislature. Maynard v. Hill, 125 U. S. 190, 31 L. Ed. 654, 8 Sup. Ct. Rep. 723.

Maynard v. Hill, supra, was precipitated as a result of an act passed by the Territory of Oregon peremptorily divorcing D. S. Maynard and Lydia A. Maynard, his wife, without reference to service or notice of any kind. In passing upon the validity of this act the court, among other things, said:

> ''When the contracting parties have entered
> into the married  state, they have not so much
> entered into a contract as into a new relation, the
> rights, duties and obligations of which rest not
> upon their agreement, but upon the general law

of the State, statutory or common, which defines
and prescribes those rights, duties and obligations.
They are of law, not of contract. It was a con-
tract that the relation should be established, but,
being established, the  power of the parties as to
its extent or duration is at an end.  Their rights
under it are determined by the will of the sover-
eign as evidenced by law.  They can neither be
modified nor changed by any agreement of parties.
It is a relation for life, and the parties cannot
terminate it at any shorter  period by virtue of
any contract they may make.  The reciprocal
rights arising from this relation, so long as it con-
tinues, are such as the law determines from time
to time and none other.''  And again:  '''It is not,
then, a contract within the meaning of the clause
of the Constitution which prohibits the impairing
the obligation of contracts.  It is, rather, a social
relation, like that of parent and child, the obliga-
tions of which arise not from the consent of con-
curring minds, but are the creation of the law it-
self, a relation the most important, as affecting the
happiness of individuals, the first step from bar-
barism to incipient civilization, the purest tie of
social life, and the true basis of human progress.''

See also Maguire v. Maguire, 7 Dana (Ky.) 181, text
183; Ditson v. Ditson, 4 R. I. 87; text 101; Pennoyer v.
Neff, 95 U. S. 714, 24 L. Ed. 565.  A careful study of
Maynard v. Hill, *supra*, further discloses that the status
of its citizens for purposes of divorce is one that has always
been deemed within the province of the Legislature to reg-
ulate and control.

It is not shown or attempted to be shown that the law
providing for the appointment of a *curator ad hoc* violates
any general law or policy of the State of Louisiana.  It is

shown that this method of effecting service on non-resident defendants has been often approved by the Courts of that State, and in the absence of any showing to the contrary, we are well within the decided cases in assuming it to be in accord with proper practice, and that the *curator ad hoc* did his duty and complied with the requirements of the law, and where it was possible to do so, corresponded with the absentee. 1 C. J. 356; Thompson v. Thompson, 226 U. S. 551, 33 Sup. Ct. Rep. 129.

It is last contended that the divorce granted in Louisiana cannot be recognized by comity in this State because of alleged defects in the petition therefor.

In Joyner v. Joyner, 131 Ga. 217, 62 S. E. Rep. 182, 18 L. R. A. (N. S.) 647, the Supreme Court of Georgia, speaking through Mr. Justice BECK, on the subject of comity, said: ''The general rule governing the comity of nations is that in a proper case the laws and judicial proceedings of one State will be enforced in another State provided they do not involve anything immoral, contrary to the general policy, or violative of the conscience of the State called upon to give them effect. Eubanks v. Banks, 34 Ga. 407; Cox v. Adams, 2 Ga. 158.

Further discussing the question of comity in Joyner v. Joyner, but quoting from Cox v. Adams, *supra,* the same court said:

> ''The comity of nations cannot be recognized as capricious,—as depending upon arbitrary whims or tyrannic impulses. It has grown into a system whose sanctions are reason, religion, and the common interests of all, for the violation of which states are amenable to the public sentiment of the world. The rules admitted by civilized states upon this subject are founded not only in convenience, but necessity. Without them commerce could not

exist between states  *  *  *   The whole system
of agencies, purchases, and sales, mutual credits,
and transfers of negotiable instruments depends
upon the *jus gentium*. In fact, nothing so much
distinguishes civilized from savage states as this
comity of nations. What is here said, as to the
necessity of a wise and uniform system of comity
between the states as regards trade and commerce,
is equally applicable to the subject of marriage
and divorce. Especially in the United States,
where, from our position as a confederation of in-
dependent sovereignties, contiguous, but each with
its own distinctive municipal law of divorce, the
necessity for such a rule of comity becomes mani-
fest.''

In the case at bar the appellee by permission of the
chancellor amended his bill by attaching thereto a certified
copy of the divorce proceedings in Louisiana. These pro-
ceedings show that the petitioner grounded her right to
divorce from the appellee solely on the ground of adultery.
The appellee offered no denial of the charge against him,
but seeks to invalidate the divorce solely on the ground
of alleged defects in the petition. He alleges the petition
to be defective in that it does not show that petitioner had
acquired her domicile in Louisiana; that it does not show
that the cause for divorce arose in Louisiana; that proper
or legal advice was had on appellee, and that it does not
show the required residence of appellant in Louisiana.

The law of Louisiana seems to embrace no specification
as to the length of time one must be a resident or citizen of
that State before being eligible to bring a suit for divorce
on the ground of adultery or for sentence to infamous
punishment (See Art. 139 and citations, page 56 Mer-
rick's Revised Civil Code of Louisiana.) But even if it,

under the facts in this case, since the chancellor found the law and the evidence to be in favor of Florrie Amelia Passailaigue, in the absence of any contrary showing, we do not feel that we would be warranted in holding the divorce invalid on this ground.    This reasoning in addition to what has been said in this opinion applies with equal force to the objection as to domicile and service by appointment of a *curator ad hoc*.    It is true that the petition for divorce alleges that the adultery on the part of appellee was commenced in South Carolina, but it also alleges that it continued into the residence of Florrie Amelia Passailaigue in Louisiana.    We think this is sufficient.    The basis for the divorce was a ground fully recognized in this State.    As against the finding of the chancellor that the law and the evidence were with Florrie Amelia Passailaigue there is insufficient showing in the record to warrant this court in holding the divorce invalid.

There are other reasons equally as persuasive as the foregoing which impel us to hold the Louisiana divorce good. It is shown in the record that the appellee married Florrie Amelia Passailaigue (nee Ramm) in 1907; that they lived together as man and wife till sometime in 1911 or 1912; when he abandoned her and absconded with a lewd woman with whom he continued to live in open adultery; that Florrie Amelia Passailaigue subsequently took up her residence in Louisiana, where she secured the divorce here attacked in 1916; that she later moved to Florida where she became a citizen, married another and gave birth to appellant Charles W. Ramm Herron, and died in 1924. The citizenship and marriage in Florida were undertaken and the will here involved was executed on the strength of the Louisiana divorce.    Now, eight years after this divorce, and fourteen years after the appellee abandoned his wife, during all of which time, so far as the record shows, he was

27—Vol. 92.

living in adultery with a lewd woman, was contributing nothing, nor had he offered to contribute anything to the support and maintenance of his lawful wife, and by his own statement did not know of her whereabouts, he comes into court, seeks to have the divorce declared null and void, though it had been proceeded under all these years, thereby making an adultress and bigamist of his former wife and bastardizing her child, all because of the probability of his participating in the division of a certain estate which it is not shown that he contributed one penny to accumulate.

The finding of the fact of domicile, or residence for the purpose of domicile by the court making the decree raises a very strong presumption that it existed. After a lapse of time and especially after the rights of other persons have intervened on the faith of the decree, the clearest and most satisfactory proof should be required to overcome the presumption. In other circumstances, less convincing evidence may suffice. DeBouchel v. Candler, 296 Fed. Rep. 482; succession of Benton, *supra*. In the case at bar many years have elapsed since the decree, the rights of third parties have intervened, the right to the decree is not denied, yet appellee attempts to have it declared void on alleged bare irregularities and bald statements of his without any proof whatever, when no policy or law of this State is shown to be violated. The Louisiana court adjudged the proceedings correct, and we think on the showing here we must assume that they were correct. Thompson v. Thompson, 226 U. S. 551, 33 Sup. Ct. Rep. 129.

Divorce in some form has existed since the beginning of history. Under the Mosaic law the husband could write the wife a bill of divorcement when she was at liberty to go and become another man's wife. Under early Roman law divorce was subject to the caprice of the husband, but later was by agreement of both parties. In modern times in

civilized countries divorce has been subject to regulation by the State or church in control.   Except as granted by Ecclesiastical Courts and Acts of Parliament in rare cases, divorce was unknown to the common law.   The first general Act of Parliament authorizing divorces was enacted more than eighty years after the Declaration of Independence. Divorces in this country were first granted by Special Acts of the Legislature, and later by general statutory provisions. No branch of the law has become more intricate and has given rise to more complex results.   If both parties are living in the same State the situation is easy; but when they have separated and live in different States, what court has jurisdiction?   Here is the point of cleavage between two lines of decision in this country: The first of which is that no judgment is good without personal service, and the second is, that marriage is *a res* and the court of the matrimonial domicile has full jurisdiction.

Bearing in mind these two conflicting theories of jurisdiction and the law as enunciated in the cases cited, we think the following rules governing the recognition of foreign divorces may be stated as being well settled: (1) If the husband obtains a divorce in the State of the matrimonial domicile, such a divorce is entitled to full faith and credit under Section 1 of Art. 4 of the Federal Constitution.   Even though rendered on constructive service; Thompson v. Thompson, *supra*.   (2) If the husband abandons the wife without cause the matrimonial domicile remains with the wife and she may obtain a divorce there on constructive service that will be binding anywhere. Parker v. Parker, 222 Fed. Rep. 186; Hall v. Hall, 123 N. Y. S. 1056.   (3) The rule is well supported that a decreee of divorce by a court not having actual jurisdiction of both parties and of the subject matter does not come under the protection of the full faith and credit clause of the Federal

Constitution.  Perkins v. Perkins, 225 Mass. 82, 113 N. E.
Rep. 841, L. R. A. 1917B 1028, and cases cited.   (4) If
the husband after separation establish his domicile in a
State other than the State of the matrimonial domicile he
may obtain a divorce under the law of that State, but it
will be binding in no other State.   Perkins v. Perkins,
*supra.*   (5) If the wife after separation removes to another
State and acquires a domicile there, she may obtain a di-
vorce by constructive or substituted service under the law
of that State binding only in said State.

Decrees of divorce covered by rules four and five, the
one in the instant case being covered by the latter, while
not entitled to full faith and credit in other States, may
generally be given effect by comity in such States if not
subversive of their policy or interests.   2 Schouler on Mar-
riage, Divorce, Separation and Domestic Relations (6th
ed.) ;  DeBouchel v. Candler, *supra;* Ditson v. Ditson,
*supra;* Felt v. Felt, *supra;* Dunham v. Dunham, *supra;*
Davis v. Davis, *supra;* Kenner v. Kenner, 139 Tenn. 211,
201 S. W. Rep. 779 ; Joyner v. Joyner, *supra;* Perkins v.
Perkins, *supra;* Gildersleeve v. Gildersleeve, *supra.*

The Louisiana divorce was based on adultery, a valid
ground in this State. In decreeing the law and the evidence
to be in favor of the petitioner, we are bound to assume
that the chancellor passed on the question of domicile,
accrual of the cause of action, residence and the sufficiency
of the service as required by the law of that state. Thomp-
son v. Thompson, and Felt v. Felt, *supra.*. No fraud is
charged, nor is it charged that the law, policy or morals of
this State have been violated in connection with the grant-
ing of the divorce, the right to which is not denied.   No
exception to the application of the rule of comity is shown,
and the record of the divorce proceedings from Louisiana

does not purport to be a copy of the "complete record of all the proceedings and papers in said cause."

We find nothing in law or fact to support the contention of appellee. We think there is sufficient showing to give the divorce effect by the rule of comity in this State, so the decree of the chancellor is reversed, with directions to enter his decree accordingly.

Reversed.

BROWN, C. J., AND ELLIS AND BUFORD, J. J., concur.