149 So.2d 587 (1963)
Harry SCHOOLEY, as Tax Assessor of Lee County, Florida, and George S. Hunter, Herman J. Hastings, Mack H. Jones, Julian Hudson and J. Fred Huber, as and constituting the Board of County Commissioners of Lee County, Florida, a political subdivision, and Ray E. Green, as Comptroller of the State of Florida, Appellants,
v.
Kimi T. JUDD, Appellee.
No. 3446.
District Court of Appeal of Florida. Second District.
January 30, 1963.
Rehearing Denied February 21, 1963.
*588 R.W. Shaughnessy, Fort Myers, for appellants.
Duane A. Reynolds, of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee.
*589 SMITH, Judge.
From a final decree finding plaintiff-appellee entitled to homestead exemption from taxation under Article X, Section 7 of the Florida Constitution, F.S.A., defendants-appellants, the Tax Assessor of Lee County, the Board of County Commissioners, and the Comptroller of Florida, bring this appeal which was transferred here from the Supreme Court of Florida. See Schooley v. Judd, Fla. 1962, 142 So.2d 727.
The plaintiff filed her claim for homestead tax exemption for the year 1961, asserting that she held the legal title to the real property involved; that she resided thereon on January 1st; and that she in good faith makes the same her permanent home. The Tax Assessor found her not to be entitled to the exemption claimed, giving as his reasons therefor: "Husband claims domicile other than Florida. Domicile of wife follows that of husband unless separate set-up for purposes of legal separation or divorce."
Upon appeal from the decision of the Tax Assessor refusing to allow the exemption, the Board of County Commissioners, sitting as a board of equalization reviewed the application and affirmed the decision of the Assessor. The applicant then instituted proceedings for a declaratory decree pursuant to Section 192.19, Florida Statutes, F.S.A. Following a final hearing, the chancellor entered the decree finding the plaintiff entitled to homestead exemption.
There is no dispute between the parties as to the facts, so it is incumbent upon us to determine whether the chancellor correctly found that Mrs. Judd was entitled to the homestead exemption from taxation. The facts are that Mrs. Judd and her husband owned the real property and both were residents of Lee County, Florida, until December, 1958, when her husband conveyed the property to her. At about the same time, her husband filed a declaration of removal of domicile from Lee County, in which he stated that he had established his domicile in Washington, D.C., where he owned a home. The husband testified that he changed his domicile to Washington because of certain requirements of law pertaining to his acting as a member of the board of directors of a corporation existing under the laws of the District. Mr. and Mrs. Judd continue to live together as husband and wife, and there has never been any separation. Mrs. Judd has continued to vote in Lee County, and she maintains a Florida driver's license and a Florida license tag on her automobile. Mr. and Mrs. Judd have maintained their marital relationship in Lee County, Florida residing together in her home, the real property described in the complaint.
Article X, Section 7 of the Constitution of Florida, provides, insofar as pertinent to the facts here, as follows:
"Every person who has the legal title * * * to real property in this State and who resides thereon and in good faith makes the same his or her permanent home, * * * shall be entitled to an exemption * * *. The Legislature may prescribe appropriate and reasonable laws regulating the manner of establishing the right to said exemption."
We have stated in Poppell v. Padrick, Fla.App. 1959, 117 So.2d 435, that "The constitutional and statutory provisions concerning homesteads should be interpreted in the liberal and beneficent spirit in which they were conceived." It has also been noted by our Supreme Court that Florida and Mississippi are practically alone in their policy of withdrawing homesteads as a source of revenue for the support of local government. Overstreet v. Tubin, Fla. 1951, 53 So.2d 913.
"`The words and terms of a Constitution are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are usually *590 understood by the people who have adopted them.
"`* * * It must be very plain, nay absolutely certain, that the people did not intend what the language they had employed in its natural signification imports before a court should feel at liberty to depart from the plain meaning of a constitutional provision. * * *'" City of Jacksonville, et al. v. Glidden Co., 1936, 124 Fla. 690, 169 So. 216.
In addition to the foregoing general principles, the rule is well established in Florida and elsewhere that where the benefits of an exemption from taxation are claimed, then the constitution or statute in question must be construed strictly against the one attempting to bring himself within the terms of the exemption. This does not mean that where an exemption is claimed in good faith the provision of law under which the claimant attempts to bring himself is to be subjected to a strained and unnatural construction as to defeat the plain and evident intendments thereof; but it does mean that the person claiming the exemption has the burden of proving that he is within the usual and obvious meaning of the constitutional and statutory provision which establishes the exemption. Lummus v. Cushman, Fla. 1949, 41 So.2d 895.
It is the general rule recognized in this and most other jurisdictions that a wife's residence or domicile is that of her husband. There is a well-established exception to this rule; that is, a wife may acquire a residence separate and apart from that of her husband if it should become proper or necessary for her to do so. This right of establishing a separate residence springs from the necessity of its exercise and endures as long as the necessity continues. Herron v. Passailaigue, 1926, 92 Fla. 818, 110 So. 539; Merritt v. Merritt, Fla. 1951, 55 So.2d 735.
Since the 1938 Amendment to Article X, Section 7, it has not been necessary to establish the relationship of the head of a household as a prerequisite to qualify for the exemption, because that requirement was thereby specifically eliminated. It was, however, incumbent upon the plaintiff to prove the necessity for her exercising her right of establishing a separate residence from that of her husband, and to show the continuance of that necessity in order to show the length of its endurance. Thus only could it be established that she in good faith makes the property in question her permanent home. The Supreme Court of Florida has defined the words, "good faith," as "a concrete quality, descriptive of the motivating purpose of one's act or conduct when challenged or called in question." Municipal Bond & Mortgage Corporation v. Bishop's Harbor Drainage Dist., 1944, 154 Fla. 246, 17 So.2d 226.
The record here fails to disclose any facts showing the necessity for Mrs. Judd to establish a residence separate and apart from her husband. Having shown no such necessity, it follows that she had no right to establish a separate residence. Therefore, she has failed to establish that she in good faith makes the property her permanent home within the meaning of the homestead exemption provision.
In rendering the decree for the plaintiff, the chancellor stated that he relied on the per curiam decision of Hoffman v. Drennen, Fla. 1956, 88 So.2d 624. This was a decision without opinion affirming a decree. We are of the view that such a decision does not establish any point of law; and there is no presumption that the affirmance was on the merits.
The decree is reversed with directions to dismiss the complaint.
ALLEN, J., concurs.
SHANNON, C.J., dissents.
*591 SHANNON, Chief Judge (dissenting).
I am compelled to dissent from the majority opinion in this case.
Article X, Sec. 7, Constitution of Florida, provides that every person having legal or beneficial title to real property in this state and who resides thereon and in good faith makes it his or her permanent home, shall be entitled to an exemption from all taxation up to the assessed valuation of $5,000.00 on the said home and contiguous real property. The section goes on further to authorize the legislature to prescribe appropriate and reasonable laws regulating the manner of establishing the right to the exemption.
Pursuant to this authorization, the legislature enacted Secs. 192.12 et seq., Fla. Stat., F.S.A. Sec. 192.12 is cast in substantially the same language as Article X, Sec. 7, of the Constitution. Sec. 192.14, Fla. Stat., F.S.A. attempts to define the words "resident," "residence," "permanent residence," "permanent home" and words of like import, providing that such words "shall not be construed so as to require continuous physical residence on the property, but mean only that place which the person claiming the exemption may rightfully and in good faith call his home to the exclusion of all other places where he may, from time to time, temporarily reside." Thus is reached the crucial question in the instant case, namely, whether Mrs. Judd rightfully and in good faith made the property sought to be exempted from taxation her permanent home.
The gist of appellants' argument is that the nature, purpose and intent of the organic and statutory provisions regarding homestead each revolve about the theory of headship of a family in this state, and that, therefore, all questions of domicile and residence must be determined in terms of the head of a household. As pointed out in the majority opinion, the concept of headship embodied in Article X, Sec. 1, of the Constitution of Florida, is not likewise a requisite to be established in order to qualify for the tax exemption in Sec. 7. See, e.g., Doing v. Riley, C.A. 5, 1949, 176 F.2d 449; and 31 Fla.Jur., Taxation, Sec. 156. In the form originally adopted by the people of Florida in 1934 Article X, Sec. 7, required the element of headship. In the 1938 amendment thereto, however, that requisite was eliminated and the section has subsisted in that form to this date.
In rendering final decree for the appellee-plaintiff, the chancellor placed reliance primarily on one case, viz., Hoffman v. Drennen, Fla. 1956, 88 So.2d 624, a per curiam decision of the Supreme Court without opinion. We secured the file in that case and find the facts there to have been well stated by the chancellor in the instant case as follows:
"Martha Kate Drennen, a citizen and resident of Franklin County, had married a citizen and resident of Alabama, who had expressed an intention of moving his residence to Florida but had not actually done so. Mrs. Drennen had maintained her home in Franklin County for several years prior to her marriage, and after her said marriage had continued to reside in her said home. Her husband spent considerable time with her in Franklin County but had not actually moved there. Mrs. Drennen applied for Homestead Exemption subsequent to her marriage in 1953, and her application was denied by the Tax Assessor and Board of County Commissioners of Franklin County, Florida. Thereupon, Mrs. Drennen filed suit in Circuit Court for a Declaratory Decree to determine if she was entitled to Homestead Exemption under the above-stated facts, and the Circuit Court held that she was so entitled, which holding was affirmed by the Supreme Court by per curiam order."
The sole question squarely before the court in the Drennen case was whether or not *592 the fact that Mrs. Drennen's husband was a resident of another state justified the denial of her application for homestead tax exemption.
Generally, the meaning conveyed by the statutory usage of the word "residence" and the word "domicile" varies according to the purpose sought to be accomplished by the particular statute under consideration, as ascertained by construction of its provisions. Although the words are not necessarily synonymous, they usually are in statutes prescribing residence as a qualification for the enjoyment of a privilege or the exercise of a franchise. Likewise, when the terms are employed in connection with domestic policy, they are generally considered synonymous. See Evans v. Evans, 1940, 141 Fla. 860, 194 So. 215; and Herron v. Passailaigue, 1926, 92 Fla. 818, 110 So. 539.
Thus, the definition placed upon the word "residence," and others of like import, by Sec. 192.14, supra, in regard to the organic exemption of homesteads from taxation, accords with the rule expressed by the authorities cited above. This logically brings us to the proposition, well established in our jurisdiction, that a wife's residence or domicile generally is that of her husband, except that she may acquire separate residence if it should become proper or necessary for her to do so. Merritt v. Merritt, Fla. 1951, 55 So.2d 735. Outside the area of domestic relations, however, research has disclosed no Florida decision in which it has been held that a wife may not have a residence other than and separate from that of her husband.
In my opinion then, neither the constitution, the statutes nor the case law of this state dealing with homestead exemption from taxation require a wife claiming the exemption to show necessity for establishing a residence separate from that of her husband. The proofs submitted in the instant case clearly show that Mrs. Judd resided on the property and in good faith made the same her permanent home.
I would hold that the chancellor in the instant case committed no error in finding the appellee entitled to homestead exemption from taxation on her property under Article X, Sec. 7, of the Constitution of Florida.