**DELTA AIR LINES, INC., Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORA-
TION, Defendant.**

**Civ. A. No. 13768.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 30, 1972.

R. S. Maurer and Frank Rox, Atlanta
Legal Division, Delta Air Lines, Inc.,
Atlanta, Ga., for plaintiff.

Smith, Cohen, Ringel, Kohler, Martin
& Lowe, Atlanta, Ga., for defendant.

ORDER

MOYE, District Judge.

*Findings of Fact*

1. This case involves the collapse of
the nose landing gear assembly of a
"stretched" or "super" DC–8 aircraft
manufactured by defendant McDonnell
Douglas Corporation ("MDC") and op-
erated by plaintiff Delta Air Lines, Inc.
("Delta"). Federal court jurisdiction is

founded upon diversity of citizenship and an amount in controversy in excess of $10,000, exclusive of interest and costs. 28 U.S.C. § 1332.

2. At the July 10, 1972, nonjury trial the parties advised the Court that the evidence and discovery developed to date indicates that the cause of the nose gear collapse during the landing roll of the aircraft was an incorrectly installed component part of the nose landing gear assembly. Delta contends that the component part was installed incorrectly by MDC when MDC assembled the aircraft. MDC on the other hand contends that the component part was correctly installed during assembly and that the component part was removed and re-installed incorrectly during post-delivery servicing of the aircraft by Delta. In the alternative, MDC contends that if there was a "defect in workmanship" (*i. e.*, incorrect installation of a component part), Delta should and could have in the exercise of ordinary care detected such defect in workmanship, and that the alleged damages therefore arise from Delta's own negligence.

3. Delta's amended complaint seeks to impose liability on four theories: Count One alleges negligence; Count Two alleges breach of implied warranties of merchantability and fitness for a particular purpose; Count Three alleges breach of the express warranty; and Count Four alleges strict liability in tort.

4. As an additional and affirmative defense MDC asserts:

(a) the limitations of liability and exculpatory clause contained in the Warranty Article of the Purchase Agreement negotiated and agreed to by the parties bar Delta's claims based on negligence, breach of implied warranties and strict liability;

(b) MDC is not liable for breach of express warranty because the Warranty Article specifically provides that liability for breach of the express "workmanship" warranty is limited, among other things, to the replacement of the improperly installed part;

(c) Delta failed to follow the warranty claim procedures spelled out in the Warranty Article, which relieved MDC of liability with respect to the claim based on breach of express warranty; and

(d) in any event MDC is not liable for the type of damages sought by Delta because such damages are specifically excluded by the limitations of liability and exculpatory clause contained in the Purchase Agreement Warranty Article.

5. MDC filed a motion for summary judgment (supported by evidence) based on the defenses outlined in the preceding paragraph. Delta submitted opposing affidavits and contended, among other things:

(a) as a matter of economic necessity Delta was required to purchase MDC's "stretched" DC-8 aircraft;

(b) the limitations of liability and exculpatory clause in the Purchase Agreement Warranty Article were forced upon Delta by MDC;

(c) Delta did not voluntarily agree to such provisions;

(d) Delta was unable to negotiate a deletion of such provisions from the Purchase Agreement;

(e) the Purchase Agreement is a contract of adhesion in this respect;

(f) the limitations of liability and exculpatory clause are unconscionable, violate public policy and are unenforceable; and

(g) the provisions of the Warranty Article therefore do not bar Delta's claims for relief.

6. The Court denied MDC's motion for summary judgment because there appeared to be material issues of fact in dispute. At the request of the parties, based upon a limited waiver of jury trial, the Court held a nonjury trial on July 10, 1972, to decide the validity of the "defense based upon the Warranty Article and exculpatory clause contained in the contract documents" (Limited

Waiver of Jury Trial, filed June 15, 1972).

7. The Purchase Agreement in question was signed at Long Beach, California, on November 18, 1964, and originally related only to the so-called "short" DC–8 aircraft, or Series 51 DC–8 aircraft. On August 13, 1966, at Long Beach, California, the parties executed Amendment No. 5 to the Purchase Agreement. The amendment provided that additional DC–8 aircraft, of the Series 61 or "stretched" variety, would be delivered to Delta under the terms and provisions of the November 18, 1964, Purchase Agreement. The accident aircraft was one of the aircraft covered in Amendment No. 5.

8. Article 4 of the Purchase Agreement stated the aircraft would be manufactured and delivered in California, and Article 17 provided: "This agreement shall be construed and performance thereof shall be determined according to the laws of the State of California, U.S.A." The Purchase Agreement also contained clauses which limited the agreements between the parties to the exact written terms of the contract.

9. At the time of the accident in question, Delta was operating the aircraft under a lease agreement with McDonnell Douglas Finance Corporation, but the lease was contemplated by the parties and they agreed that the lease agreement would not abrogate or modify the provision of the Purchase Agreement.

10. The Warranty Article in the Purchase Agreement provided:

"12. WARRANTY.

"(A) Subject to the limitations and conditions hereinafter set forth, seller warrants that the aircraft, accessories, equipment and parts supplied hereunder which have been manufactured by seller, and by other manufacturers if made to detailed design and detailed specifications originated by seller, shall at the time of delivery by seller be free from:

(1) Defects in material and workmanship furnished by seller and used in the fabrication thereof;

(2) Defects arising from the selection of material or process of manufacture;

(3) Defects inherent in the design thereof in view of the state of the art as of the date of such design;

(4) Defects arising from failure to conform to the detailed specifications of this purchase agreement except as to such portions thereof, if any, as are expressly stated to be not guaranteed.

"(B) Defects in material and workmanship, defects arising from the selection of material or process of manufacture and defects arising from failure to conform to the detailed specifications, must become apparent in the aircraft, accessory, equipment or part within one (1) year or two thousand (2,000) flying hours, whichever shall first expire, but not less than eight (8) months after delivery of said aircraft.

"The extent of seller's liability under this warranty as to defects in material or workmanship, defects arising from the selection of material or the process of manufacture, and defects arising from failure to conform to the detailed specifications, is limited to the repair at its expense of such defects in the aircraft or to the repair or replacement at its expense (with a similar item free from the defect in question) of any accessory, equipment or part which is defective in any of such respects.

"(C) The extent of seller's liability under this warranty as to defects inherent in design is limited to the correction at its expense of all such defects becoming apparent in the aircraft, accessory, equipment or part purchased hereunder within one (1) year or two thousand (2,000) flying hours, whichever shall first expire, but not less than eight (8) months after delivery of said aircraft.

"(D) Seller shall make the foregoing repairs, replacements and corrections with reasonable care and dispatch in order that the aircraft, system, accessory,

equipment or part involved may not be kept out of service longer than necessary. Disassembly of the aircraft to correct the defect, removal of the defective or faulty structure, system, accessory, equipment, or new part and installation of the corrected or new structure, system, accessory, equipment or new part and re-assembly of the aircraft shall be at buyer's expense, unless such work is performed by seller at its factory at Long Beach, California, or unless buyer offers to return the aircraft, accessory, equipment or part and buyer and seller thereafter mutually agree that buyer will perform the work and that seller will pay buyer in whole or in part for removal, installation and re-assembly of the aircraft. Cost of temporary or interim repairs, replacements and corrections accomplished by buyer, as well as any consequential cost related thereto, shall likewise be at buyer's expense, except when seller, in advance, approves in writing such temporary or interim repairs, replacements and corrections and the cost thereof, which cost seller may agree to pay in whole or in part.

"(E) Seller shall, as to each defect, be relieved of all obligations and liability under this warranty if:

(1) The aircraft is operated with any accessory, equipment or part not specifically approved by seller and not manufactured by seller or to seller's design and specification unless buyer furnishes reasonable evidence that such installation was not a cause of the defect; provided that this provision shall not apply to any accessory, equipment or part, the use of which does not affect the safety of the aircraft;

(2) The aircraft shall not have been operated or maintained in accordance with seller's instructions furnished under this agreement, unless buyer furnishes reasonable evidence that such operation or maintenance, as the case may be, was not a cause of the defect;

(3) The aircraft shall not have been operated under normal airline use, unless buyer furnishes reasonable evidence that such operation was not a cause of the defect;

(4) The aircraft shall have been repaired, altered or modified without seller's approval or if the aircraft shall have been operated subsequent to its involvement in an accident, unless buyer furnishes reasonable evidence that such repair, alteration, modification, operation or accident was not a cause of the defect, provided, however, that this limitation insofar as it relates to repairs and accident shall not be applicable to routine repairs or replacements or minor accidents which normally occur in the operation of aircraft if such repairs or replacements are made within suitable material and according to standard practice and engineering;

(5) Buyer does not (i) report the defect in writing or by telegram to seller's warranty administrator at its factory in Long Beach, California, within sixty (60) days following such defect becoming apparent to buyer as provided in paragraphs (B) and (C) above, and (ii) return the defective or faulty aircraft, accessory, equipment or part to said factory (or, if return to seller's factory is not feasible and seller so agrees in advance in writing, which agreement shall not unreasonably be withheld, to buyer's base repair shop or other appropriate facility in the United States) within sixty (60) days following the end of the applicable period of time specified in paragraphs (B) and (C) above, or within sixty (60) days following such defect becoming apparent, whichever is earlier, and further provided that if, for reasons beyond buyer's control, return of the items to seller's factory is not possible within said sixty (60) day period, and if buyer so notifies seller in writing and seller so agrees in writing, which agreement shall not unreasonably be withheld, the said sixty (60) day period will be waived, but

buyer must return the item to seller's said factory if, as and when said return does become feasible. Buyer also must submit reasonable proof to seller, within sixty (60) days after the defect becomes apparent (except when such period is waived) that the defect is due to a matter embraced within the seller's warranty hereunder. Seller shall approve or disapprove buyer's substantiated warranty claim in writing within sixty (60) days of receipt thereof. All such transportation, including return to buyer of the repaired, replaced or corrected aircraft, accessory, equipment or part shall be at buyer's expense.

"With respect to matters made the subject of seller's approval under subparagraphs (1), (4) and seller's approval or disapproval of buyer's warranty claim under (5) of this paragraph (E), seller's approval or disapproval thereof shall be made in writing to buyer within sixty (60) days after buyer's written notice requesting approval is received by seller. In the event of disapproval, seller shall set forth the reasons therefor in its statement of disapproval. Seller's failure to deliver to buyer a written statement of approval or disapproval within such sixty (60) day period shall irrevocably and conclusively constitute approval by seller of the subject matter of the particular request involved.

"(F) Normal wear and tear and the need for regular overhauls shall not constitute a defect or failure under this warranty. Buyer acknowledges that some of the accessories, equipment and parts warranted hereunder have a normal life expectancy that is less than the time period specified under paragraph (B) and (C) above.

"(G) The warranty provided in this article and the obligations and liabilities of seller thereunder are in lieu of and buyer hereby waives all other warranties, guarantees or liabilities, express or implied arising by law or otherwise (including without limitation any obligation of seller with respect to consequential damages) and whether or not occa-

sioned by seller's negligence and shall not be extended, altered or varied except by a written instrument signed by seller and buyer; provided that in the event the provision relieving seller from liability for its negligence should for any reason be ineffective, the remainder of this paragraph (G) shall remain in full force and effect."

11. The aircraft Purchase Agreement incorporated the terms of a prior agreement, including the Warranty Clause, which were the subject of intensive negotiation. There was no substantial imbalance in the bargaining position of the parties and the Warranty Clause was not dictated by MDC on a "take it —or leave it" basis. Due to the California Court of Appeals decision in Delta Air Lines, Inc. v. Douglas, 238 Cal.App. 2d 95, 47 Cal.Rptr. 518 (1965), entered several months before the parties entered into the agreement in the instant case, Delta was aware that MDC would, under certain circumstances, agree to modification or elimination of the exculpatory clause, albeit for a price which Delta apparently did not wish to pay (see, 238 Cal.App.2d at 103, n. 5, 47 Cal.Rptr. 518).

*Conclusions of Law*

When ruling on substantive matters of law, federal courts must follow the laws of the State in which it sits [Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] including its Conflicts of Laws rules [Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)]. The Georgia conflicts of law rule concerning the validity and interpretation of contracts made in another state provides the law of the state where the contract was made and performed will govern except when the result is contrary to the public policy of the State of Georgia. Cox v. Adams, 2 Ga. 158, 165 (1847); Tillman v. Gibson, 44 Ga. App. 440, 442, 161 S.E. 630, 631 (1931). The Georgia state courts would apply California law in this case not only because the contract was made and per-

formed in California, but also because the parties specifically agreed in the contract that California law would control.

12. The contract before the Court is in all material respects identical to the contract ruled on by the California Court of Appeals in Delta v. Douglas, *supra*. That case, which Delta unsuccessfully sought to have reviewed by the California Supreme Court, is the law of California so far as the matters at issue here are concerned. Accordingly, this Court must uphold the validity of the exculpatory clause contained in the Warranty Article of the contract before the Court.

Thus, Delta's causes of action sounding in "negligence" and "strict liability in tort" are dismissed. Delta's causes of action based on the validity of the Warranty Clause, which is hereby upheld as a matter of law, and recovery thereunder are reserved for determination by jury trial pursuant to the limited waiver of jury trial referred to above.